UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

PRO SE PRISONER CIVIL RIGHTS
COMPLAINT

United States District Court
District of Connecticut
FILED AT BRIDGEPORT
6/13/14
By _Rita Tabora_ Clerk
Roberta D. Tabora, Clerk
Deputy Clerk

CASE NO. 3:14 CV877 (SRU)

PLAINTIFF(S) **[Write the name(s) of the person(s) complaining]**

Santos de Jesus Candelaria

_____

_____

_____

_____

vs.

DEFENDANT(S) **[Write the name(s) of every person you are suing. If you do not know a name, write "John Doe" or "Jane Doe." Include the defendant's rank or title and place of employment if you know it.]**

Parlamento. del i CoM: Compañia gundan De Parlamento de Justicia

Del Parlamento del Policia. WIIC Parlamento (C.M.H.C.)

Del Parlamento de Correcion del Parlamento del Forence. Parlamento de Tencologia

Del Parlamento de Commission. Humano. UCONN Televisol. wueder

Del Parlamento del Telefon.cai Facebook.You Tube. Vidios ge Mes.

Rev. 6/19/13

**Please complete every section and SIGN THE LAST PAGE.**

**A.    JURISDICTION**

Because federal courts cannot hear every kind of claim, you must
identify the law that says this court can hear your claim. There
are two possibilities.  Check **one**.

I can bring my complaint in federal court because I am suing:

1.    _____*Fed*_____ State, county or city employees for violating my
      federal rights under 42 U.S.C. Sec. 1983; OR

2.    _____*Fed*_____ Federal employees for violating my federal rights
      under *Bivens v. Six Unknown Named Agents of Fed. Bureau of
      Narcotics*, 403 U.S. 388 (1971) and 28 U.S.C. Sec. 1331.

**B.    PLAINTIFF(S)** (THE PERSON(S) FILING THIS COMPLAINT)

If there are more than two plaintiffs, attach additional pages.
Provide items a, b, and c for each additional plaintiff.

1.    First Plaintiff
      a.    Full Name: *Santos de Sesus Candelaria*
      b.    Inmate Number: *362958*
      c.    Correctional facility: *Garner, CI 50 Nunnawauk Road, Newtown CT 06470*

2.    Second Plaintiff
      a.    Full Name:
      b.    Inmate Number:
      c.    Correctional facility:

C.    **DEFENDANT(S)** (THE PERSON(S) WHOSE ACTIONS YOU ARE COMPLAINING ABOUT)

1.    First Defendant

   a.    Full Name:

   b.    Rank or Title:

   c.    Workplace:

2.    Second Defendant

   a.    Full Name:

   b.    Rank or Title:

   c.    Workplace:

3.    Third Defendant

   a.    Full Name:

   b.    Rank or Title:

   c.    Workplace:

4.    Fourth Defendant

   a.    Full Name:

   b.    Rank or Title:

   c.    Workplace:

5.    Fifth Defendant

   a.    Full Name:

   b.    Rank or Title:

   c.    Workplace:

6.    Sixth Defendant

   a.    Full Name:

   b.    Rank or Title:

   c.    Workplace:

Rev. 6/19/13                          3

**D.    PREVIOUS LAWSUITS**

Tell the Court if any plaintiff has filed other state or federal lawsuits involving these defendants or events. If you need more space, attach additional pages. **Provide items a-d for each case.**

1.   First Lawsuit

    a.   Court and Date filed:

    b.   Caption and Docket No.:

    c.   Briefly, what was this lawsuit about?

    d.   Did you win or lose? If you lost, did you appeal? If you appealed, what did the appeals court say?

2.   Second Lawsuit

    a.   Court and Date filed:

    b.   Caption and Docket No.:

    c.   Briefly, what was this lawsuit about?

    d.   Did you win or lose? If you lost, did you appeal? If you appealed, what did the appeals court say?

3.   Third Lawsuit

    a.   Court and Date filed:

    b.   Caption and Docket No.:

    c.   Briefly, what was this lawsuit about?

    d.   Did you win or lose? If you lost, did you appeal? If you appealed, what did the appeals court say?

## E.   REASON FOR COMPLAINT

**WARNING**: Common mistakes can get your case **dismissed as frivolous or for failure to state a good legal claim.** If this happens, you will still have to pay the filing fee, even if you are proceeding *in forma pauperis.* To avoid losing your filing fee, please read these instructions carefully and consult Inmate Legal Assistance at 1-800-301-ILAP (4527) before you file.

1.   **PROVIDE A SHORT AND PLAIN STATEMENT OF YOUR CLAIM.**   Only include the facts of your claim: State what happened, who was involved, how they were involved, when the events took place, how you were hurt and what is the extent of your injuries.

2.   **DO NOT INCLUDE UNRELATED CLAIMS IN THE COMPLAINT.**  You should only include allegations regarding one set of circumstances that involve the defendants.   Federal court rules require that unrelated claims must be filed in separate actions.   For example, if you have a claim for use of excessive force against one defendant and a due process claim against another defendant, the claims should not be included in the same complaint.

3.   **DO NOT MAKE LEGAL ARGUMENTS OR CITE CASE LAW.**

4.   **YOU ARE NOT REQUIRED TO ATTACH EXHIBITS.** If you do attach exhibits, you should refer to the exhibits in the statement of your claim and explain why they are relevant.

5.   **USE THE PRISON GRIEVANCE PROCEDURE BEFORE FILING YOUR LAWSUIT.**

6.   **DO NOT INCLUDE INCIDENTS THAT HAPPENED A LONG TIME AGO:** If you are suing about events that happened more than three years ago, the defendants may ask the Court to dismiss your case under the "statute of limitations."

7.   **DO NOT INCLUDE AS DEFENDANTS PEOPLE WHO WERE NOT PERSONALLY INVOLVED.**   You can generally only sue defendants who were directly involved in harming you. In order to sue a supervisor, you must usually show that the supervisor knew about the actions of other defendants and failed to stop them.

8.   **DO NOT INCLUDE CLAIMS RELATING TO YOUR CRIMINAL CONVICTION OR TO PRISON DISCIPLINARY PROCEEDING THAT RESULTED IN LOSS OF GOOD TIME CREDITS.** If winning your claims "would necessarily imply the invalidity" of a criminal conviction or prison disciplinary punishment affecting the time served, then you cannot make these claims under Section 1983 unless you have already had the conviction or prison disciplinary proceeding invalidated, for example through a habeas proceeding.

Rev. 6/19/13                       5

Statement of Case 1200621987

Pol el Caso. de Grivance & APPEALS 14087 i el Grivence

1. del Caso 1200621987 esta. Corte de Rockville. esto es Todo.
   SanTos de Sesus Candelaria es Toes Mijure MenTo.

2.

3.

4.

5.

6.

7.

8.

Rev. 6/19/13                    6

If you need more space, attach additional pages, but be as brief as possible.

**F.      REQUEST FOR RELIEF**

Tell the court what kind of relief you want. **Remember:** (1) You can only get money damages for mental or emotional injury if you were also physically injured; (2) Money damages may be reduced to pay restitution to victims of your crime and fees for a court-appointed attorney, if you had one; (3) You cannot use a Section 1983 or *Bivens* action to request release from custody, a reduction in your sentence, or a restoration of good time credits.  For any of these, you must pursue a Writ of Habeas Corpus.

SPECIAL. MoNiToRiNG. daño. EMosional.fisico inJuvio TeMorisedo.i deño Sicolojico i fui MalTraTado. Sicojico SexuAl.MenTe Tengo.Travma. ConeBPeCiAl.MoNiToRiNG SexuAl

**G.      DECLARATION UNDER PENALTY OF PERJURY**

**WARNING: You must sign this or your complaint will not be filed.**

By signing this complaint, I certify under penalty of perjury that the information contained in this complaint is true and accurate to the best of my knowledge.  I understand that if I lie in this complaint, I may be prosecuted for perjury, and punished with as much as five (5) years in prison and/or a fine of $250,000.  See 18 U.S.C. Sections 1621, 3571.

Signature: _Sauilos de Sesvs Candekvia_

Signed at _Santo de Mana Candeseria_   on _APR.23.2014_
                    (Location)                      (Date)

If there are additional plaintiffs, attach another page with the name and signature of each plaintiff on it.  **The complaint cannot be filed without a signature from each plaintiff.**

Rev. 6/19/13                    7

## H.   FINAL INSTRUCTIONS

**WARNING: Your complaint will not be filed** unless you complete each of these steps:

1.      Sign the Declaration under Penalty of Perjury on p. 7.

2.      Provide one copy of the complaint for the Clerk's Office. If the correctional facility in which you are incarcerated participates in the Prisoner Electronic Filing Program, you should efile the complaint.

3.      If the correctional facility in which you are incarcerated does not participate in the Prisoner Electronic Filing Program, send the complaint to one of the seats of court listed below:

- CLERK'S OFFICE, UNITED STATES DISTRICT COURT, 915 LAFAYETTE BOULEVARD, BRIDGEPORT, CT 06604.

- CLERK'S OFFICE, UNITED STATES DISTRICT COURT, 450 MAIN ST, HARTFORD, CT 06103

- CLERK'S OFFICE, UNITED STATES DISTRICT COURT, 141 CHURCH ST, NEW HAVEN, CT 06510

Remember, the Clerk cannot file your complaint unless you take all of the steps above.

Rev. 6/19/13                          8

CONFIDENTIAL

I/m Santos
#362958

F-215

Church [LCMS-H]     754-7618
1, Exit 18E], Waterbury   Handicapped Access
School 10:30 AM, Ephesians 2:8-9

Church (LCMS)   [860] 379-3172
Hartford          stpaulsnewhartford.com
AM; Sun School 9:30 AM; Adult Bible Study 9:30 AM.

n Church............[860] 672-6897
alf Green, Cornwall          Pastor R. Pohl

urch (ELCA)...............754-5469
Waterbury          Reverend Henry Morris
:00 AM, Sunday School 9:00 AM.

## ETHODIST

odist Church...............489-8084
, Torrington     Pastor: Rev. Barbara Schaffer
School 11:00 AM.                489-8754.

odist
ton...............[860] 283-0019
lemorial Park], Thomaston     Handicap Access
orship 11 AM, Thursday Bible Study 9
th Jones                P

d Methodist Church
und Our Doors are Always
augatuck                      org
10:15 AM. Pastor

Id man-made doctrines, the B___'s our guide.
Bible Study Class 9:30 A____
weekly Bible Study location____   ____hip Service 10.

Living Faith Christian Church...............754-5940
6th Prospect Road, Waterbury
Services: Sunday 10:00 AM, Wednesday 7:00 PM   Pastor: Keith Stuarte
Associate Pastor: Michael R. Monti   Assistant Pastor: Ollie Gray III

New Life Christian Church...............[203] 754-8212
25 Montoe Road, Waterbury
Nursery Available. Sunday Morning Service 10:00 AM
We Evening Home Group 7:00 PM, Bi-weekly Men & Women's Fellowship

Oasis Church...............[203] 439-0150
17 Sandbank Road, Cheshire     www.celebratethejourney.org
Sunday Worship 10:15 AM.   Pastor Dennis Ritchie

River Valley Church...............[203] 910-2497
44 Waterbury Road, Prospect [2nd Floor]
Services - Sunday at 10:00 AM Bible Study - see web page for details.
(see website for schedule). www.rivervalleychurchct.com

The Father's House...............[860] 417-3535
523 Main Street, Watertown (behind cinema)   handicapped access
Sunday 10:00 AM Worship Service & Children's Church
Pastors Carol & Dan Rubelmann                www.tfh-ct.org

Walnut Hill Community Church...............[203] 796-7377
at ____   ____pool, 565 Chase Parkway, Waterbury
____   ____Church? Think ____   Check Us Out!
____   ____M, Col____   ____ldren A Pe____
Call___   ____astor Chris Flowe____   ____
____ w y Church____   ____   [203] 753-67__

Daily Mass
Past___   ____   ___ Ferraro

Shrine of Lourdes in Litchfield...............[860] 567-1
50 Montfort Road, Route 118, Litchfield, CT 06759
All Masses 10:30 AM Tuesday-Saturday at Montford House Chapel;
Sunday in the Grotto Chapel.
www.shrinect.org   lourdesshrinect@gmail.com

St. Anthony's Church...............758-4056
4 Union City Road, P.O. Box 7117, Prospect
Sunday Masses 7:30, 9:30 & 11:15 AM, Saturday Vigil 4:30 PM
Daily Mass 8:00 Monday - Friday 8:00 AM
Rosary Monday - Friday 7:30 AM, Penance Sat 3:00 - 3:45 PM
Pastor: Rev. Mark S. Suslenko   Weekend Assistant: Rev. Joseph DeCarolis

St. Joseph R.C. Church   756-8837
46 Congress Avenue, Waterbury
Masses: Sunday 9 AM & 10:30 AM Lithuanian in Chapel in Parish Center
Tuesday & Thursday 8:30 AM

St. Patrick R.C. Church...............756-8837
50 Charles Street, Waterbury
Masses: Saturday Vigil 4 PM, Sunday 10:30 AM, Wed Evening 6:15 PM

St. Thomas Church...............[860] 283-5817
1 East Main Street, Thomaston     www.stthomasthomaston.org
Saturday Vigil 4:00 PM, Sunday 8:00 AM, 10:00 AM & 11:30 AM
Pastor: Reverend Robert J. Grant

____ of St. Anne (for all mothers)
____ Street, Waterbury     Pastor Jeremi
____M with Full Choir, No Saturday Mass.
____uding Holy Day of ____gation.

____VATION ARMY

# Clark

Continued from Page B1

"If I could afford a podium," Clark quipped, "I'd still be in the race."

During his brief remarks, Clark praised Roraback, saying he "embodies the spirit and independence of a New England Republican." He did not mention the other Republicans in the race.

"The Republicans must support a candidate who upholds the vital principles of limited government and fiscal responsibility, while also demonstrating integrity, a successful record at the polls and proven

ability to govern," Clark said.

The 5th District contest, a rare open seat in Connecticut, has generated an unusual amount of rancor among Republicans.

Clark filed a complaint with the Federal Election Commission last month after revelations that former Gov. John G. Rowland was on the payroll of the health care company led by Brian Foley, Lisa Wilson-Foley's husband. Rowland, now a drive-time talk radio host on WTIC in Hartford, has been openly critical of Roraback on the air while promoting Wilson-Foley's candidacy.

In the small world that is Connecticut politics, Clark was part of the FBI's investigative team that put Rowland in prison on corruption charges.

State Republican Chairman Jerry Labriola Jr. attended Clark's Wednesday press conference and praised him for running "a great campaign."

"Mike has made a great impression and I feel he has a very bright future in our party," Labriola added.

Republican delegates to the state convention will endorse a nominee Friday, but the race is likely to be decided by a primary on Aug. 14.

The 5th District seat is now held by U.S. Rep. Chris Murphy, who is seeking a seat in the U.S. Senate instead of running for re-election. Three Democrats — Chris Donovan, Elizabeth Esty and Dan Roberti — are also running for the seat.

students got to look at their own Facebook page, while others

posed to self-affirmation activity, more from those who

pants were allowed to choose an activity: looking at their own

er than the average rating of the other activities.

www.stpaulson...

**a Church (LCMS-H)    754-7618**
1, Exit 18EJ, Waterbury    Handicapped Access
chool 10:30 AM, Ephesians 2:8-9

**Church (LCMS)   (860) 379-3172**
Hartford          stpaulsnewhartford.com
M; Sun School 9:30 AM; Adult Bible Study 9:30 AM.

**n Church**............**(860) 672-6897**
ill Green, Cornwall          Pastor R. Pohl

**urch (ELCA)**..................**754-5469**
Waterbury          Reverend Henry Morris
:00 AM, Sunday School 9:00 AM.

# ETHODIST

**odist Church**..................**489-8084**
, Torrington    Pastor: Rev. Barbara Schaffer
School 11:00 AM,                    489-8754.

**odist**
**ton**..................**(860) 283-0019**
lemorial Park), Thomaston    Handicap Access
orship 11 AM, Thursday Bible Study P....
th Jones          P.....

**I Methodist Church**
nd Our Doors are Always
augatuck                          org
10:15 AM, Pastor...

---

No man-made doctrines, the Bible's our guide ...
ible Study Class 9:30 AM....
weekly Bible Study location.      ship Service 10:..

**L.ing Faith Christian Church**..............**754-5940**
5. Prospect Road, Waterbury
Services: Sunday 10:00 AM, Wednesday 7:00 PM    Pastor: Keith Stuarte
Associate Pastor: Michael R. Monti    Assistant Pastor: Ollie Gray III

**New Life Christian Church**..............**(203) 754-8212**
251 Montoe Road, Waterbury
Nursery Available, Sunday Morning Service 10:00 AM
We Evening Home Group 7:00 PM, Bi-weekly Men & Women's Fellowship

**Oasis Church**..............**(203) 439-0150**
17 Sandbank Road, Cheshire.    www.celebratethejourney.org
Sunday Worship 10:15 AM.    Pastor Dennis Ritchie

**River Valley Church**..............**(203) 910-2497**
44 Waterbury Road, Prospect (2nd Floor)
Services - Sunday at 10:00 AM, Bible Study - see web page for details.
(see website for schedule). www.rivervalleychurchct.com

**The Father's House**..............**(860) 417-3535**
521 Main Street, Watertown (behind cinema)    Handicapped access
Sunday 10:00 AM Worship Service & Children's Church
Pastors: Carol & Dan Rubelmann          www.tfh-ct.org -

**Walnut Hill Community Church   (203) 796-7371**
at chase C....            chool, 565 Chase Parkway, Waterbury
"hil the.....    ....Church? Think A....    Check Us Out!
          ....M. Colin....    ....hister-t-C....
          ....(Conta....

---

Daily M....
Pastor ....    Filtrato

**Shrine of Lourdes in Litchfield**....**(860) 567-1...**
50 Montfort Road, Route 118, Litchfield, CT 06759
All Marian 10:30 AM Tuesday-Saturday at Montford House Chapel,
Sunday in the Grotto Chapel,
www.shrinect.org    lourdesshrinect@gmail.com

**St. Anthony's Church**..............**758-4056**
4 Union Cay Road, P.O. Box 7117, Prospect
Sunday Masses 7:30, 9:30 & 11:15 AM, Saturday Vigil 4:30 PM
Daily Masses Monday - Friday 8:00 AM
Rosary Monday - Friday 7:30 AM, Penance Sat 3:00 - 3:45 PM
Pastor: Rev. Mark S. Suslenko   Weekend Assistant: Rev. Joseph DeCarolis

**St. Joseph R.C. Church   756-8837**
46 Congress Avenue, Waterbury
Masses: Sunday 9 AM & 10:30 AM Lithuanian in Chapel in Parish Center
Tuesday & Thursday 8:30 AM

**St. Patrick R.C. Church**..............**756-8837**
50 Charles Street, Waterbury
Masses: Saturday Vigil 4 PM, Sunday 10:30 AM, Wed Evening 6:15 PM

**St. Thomas Church**..............**(860) 283-5817**
1 East Main Street, Thomaston    www.stthomasthomaston.org
Saturday Vigil 4:00 PM, Sunday 8:00 AM, 10:00 AM & 11:30 AM.
Pastor: Reverend Robert J. Grant

....ne-of-St. Anne (for all mothers)....
....reet, Waterbury    Pastor Jeremi....
....M with Full Choir, No Saturday Mass,....
....M including Holy Day's c....ation.

ATTACHMENT C-7



## State of Connecticut
## Department of Correction
### Classification Review Sheet

| Name: | Santos, Jose | | Number: | 362958 | | |
|---|---|---|---|---|---|---|
| Date of Review: | 4/11/14 | Facility: | 136 | | Housing: | G 206 |

### Hearing Type

| | | | |
|---|---|---|---|
| ☐ Initial Review | ☐ Community Release | ☐ Parole Hearing | ☐ Disciplinary Review |
| ☒ Regular Review | ☐ Level Reduction | ☐ New Information | ☐ Institutional Classification Action |

### Risk Scores

| Escape | | Sev/Viol Offense | 4 | Violence History | 4 |
|---|---|---|---|---|---|
| Length of Confinement | | Detainers | 4 | | |
| Discipline | 4 | Security Risk Group | 1 | Overall | 4 |

### Need Scores/ Subcodes

| Medical | 1 | Alcohol/Drug | 2 | Community | 1 |
|---|---|---|---|---|---|
| Mental Health | 3 | Vocational | 4 | Education | 5 |

### Institution Assignment

| Program Assignment | | Date | | Job Assignment | | Date | |
|---|---|---|---|---|---|---|---|
| School Assignment | | Date | | Outside Clearance | | Date | |
| | | | | Other | | Date | |

### Eligibility Dates

| Next Classification Review: | | Release Date: | | Level Reduction: | |
|---|---|---|---|---|---|
| Transitional Supervision: | | Community Release: | | Parole Eligibility: | |
| Home Confinement: | | Other: | | | |

Comments: Inmate seen & notified - Remain Overall 4

The assigned sex treatment needs score is not listed on this form.  If you'd like written documentation of this score, you will need to submit an inmate request form to your Unit Counselor.
This signature indicates that I acknowledge that changes have been made to my classification scores and does not imply consent. I also understand that I may appeal in writing to the unit administrator or designee within 15 days of the decision.

| Santos de Jesus | 4-21-14 | ☐ Inmate Refused to Sign |
|---|---|---|
| Inmate Signature | Date | |
| CO O'Donnell | 4-21-14 | ☐ Inmate Declines Copy |
| Staff Witness and Title | Date | ☐ Inmate Waived |



## Grievance Returned Without Disposition
### Connecticut Department of Correction

CN 9606
REV 1/31/09

| Inmate name: SANTOS,JOSE | | Inmate number:  362958 |
|---|---|---|

| Facility/Unit:   136 | Housing unit:  G206 | Date:    3/28/2014 |
|---|---|---|

Return log number:     14-087

**Your attached grievance is being "Returned Without Disposition" for the following reason(s).**

In accordance with Administrative Directive 9.6, Inmate Administrative Remedies, Section 6(E), a grievance may be **Returned Without Disposition** to the inmate for the following reasons:

1. ☒  An inmate shall attempt to resolve a problem through the Inmate Request System prior to filing a grievance. The inmate shall attach CN 9601, Inmate Request Form, containing the employee's response, or explain why it is not attached (see comments below).

2. ☐  A grievance must be filed on CN 9602, Inmate Administrative Remedy Form.

3. ☒  Each grievable matter shall be submitted on a separate CN 9602, Inmate Administrative Remedy Form.

4. ☐  The grievance and the action requested should be stated simply and coherently.

5. ☐  The length of the grievance shall be restricted to the space available on the face of the grievance form and one additional page.

6. ☐  The grievance must be free of obscene or vulgar language or content.

Comments:

YOU DID NOT ATTACH AN INMATE REQUEST FORM TO THIS GRIEVANCE TO SHOW THAT YOU ATTEMPTED AN INFORMAL RESOLUTION. THERE ARE MULTIPLE ISSUES ON THIS GRIEVANCE, EACH GRIEVABLE MATTER MUST BE SUBMITTED ON SEPARATE GRIEVANCE FORMS. IN ADDITION, THERE ARE MEDICAL ISSUES ON THIS GRIEVANCE WHICH YOU MUST FILE SEPERATLY AND FILE WITH THE MEDICAL DEPARTMENT.

**You may resubmit your grievance when it is in compliance with Administrative Directive 9.6, Inmate Administrative Remedies.**

| Administrative Remedies Coordinator:    CC MARINO | Date:    3/28/2014 |
|---|---|

Inmate Request Form
Connecticut Department of Correction

CN 9601
REV 1/31/09

Inmate name: Santos    JAN 28 2014    Inmate number: 362958

Facility/Unit: Garner    Housing unit: G-206    Date: 1-22-14

Submitted to: Servicio de Religion

Request: Me Siento que Mestan Violando Mi derecho de Mi Servicio Religioso y la Ley
de Coordinacion de Religion AD 108 de Attivacion de responsabilida de Religion Mendira. Mi
derecho que No Puede viola Mi derecho de Mi Personalida cristiana cuando estan violando
Mi derecona Religioso i folcejando Me Aquello este Leyendo todo el Tiempo la Biblia
con un Sitema que fue Plantiado en Mi cuerpo que sella Ma Datails of PhotoTransduction in
rad. PhotorecePtor i que esta Plantiado en aria del Miembro este Sitte Ma fue sin
conocimiento de Mi Persona de Mi Attovida. Cuando Tiene que yo Tenei conocimiento:
Cuandafuera Plantiado en Mi cuerpo i Yo no Attorizado Al dePartamento de correcional, i No
filMando un documento, Polo Tanto Yo no filMe un documento Attorizando A correcion i A
Medica cuando Violaron todo Mi derce emofísico. Mental i Emotional cuando la ley Me

continue on back if necessary

Previous action taken: Mendira que cuando violan una de los derecho Sea sometido
A la Ley Superior de una corTe i Sea sometido A una He Mocion i Sea una inve
stigacion del caso que fue Plantiado Polos derecho de una Pelsona.

continue on back if necessary

Acted on by (print name):    Title:

Action taken and/or response:

continue on back if necessary

Staff signature:    Date:

**CONFIDENTIAL**
(FOR OFFICIAL USE ONLY)

Inmate name: Santos de Jesús Candelaria

Inmate number: 362958

Housing: G-206

## SECTION 4 — STATE THE PROBLEM AND REQUESTED RESOLUTION

Provide any factual information that is applicable, including any responses from staff. State the action that you think should be taken to resolve the problem. PLEASE PRINT.

*[Handwritten narrative in Spanish/English — largely illegible]*

Inmate signature: Santos de Jesús Candelaria Jr.

Date: 2-12-14

For all remedies except health services, deposit this form in the **Administrative Remedies box**.
For a health services issue, deposit this form in the **Health Services box**.

## SECTION 5 — DECISION / OFFICIAL USE ONLY – DO NOT WRITE IN THE SPACE BELOW

Date Received: 3/10/14

IGP #:

T#:

Disposition: Returned without disposition

Date of Disposition: 3-28-14

Reason: See attached



Details of phototransduction in rod photoreceptors

☐ You have exhausted DOC's Administrative Remedies.

Signature: CC Marino

Date: 3-28-14

# Inmate Administrative Remedy Form
## Connecticut Department of Correction

CN 9602
REV 2/16/12

RECEIVED
MAR 1 0 2014
GRIEVANCE & APPEALS

Facility/Unit: Garner, Medical      Date: 2-12-14

Inmate name: Santos      Inmate number: 362958

## SECTION 1          SELECT ADMINISTRATIVE REMEDY A, B or C BELOW.

Follow the instructions *(for property claims, complete form CN 9609, Lost/Damaged Property Investigation Form and deposit in the 'Administrative Remedies' box).*

**A.** ☒ **I am filing a Grievance.**
Prior to filing a grievance, you must attempt informal resolution. Attach a copy of CN 9601, Inmate Request Form with the staff member's response OR state in Section 4 the reason why the form is not attached. Grievances must be filed within 30 days of the occurrence or discovery of the cause of the grievance.      >   Refer to Section 2 below

**B.** ☒ **I am requesting a Health Services Review:** ☐ Diagnosis/Treatment   > 
☐ All Other Health Care Issues      >   Complete Section 4   >>>>

**C.** ☐ **I am filing an Appeal of a (select one below):**
Appeals must be filed within 15 days of notification of a decision.
☐ Disciplinary Action      >   Complete Section 3 below
☒ Special Management Decision    ☐ Classification Decision
☐ Media Review Committee Decision  ☐ Furlough Decision    >
☐ Security Risk Group Designation  ☐ ADA Decision    >   Complete Section 4   >>>>
☒ Determination of Grievance Process Abuse  ☐ Rejection of Outside Tapes/CDs
☐ Rejection of Correspondence    >

## SECTION 2     OTHER REQUIREMENTS FOR USING THE INMATE ADMINISTRATIVE REMEDY PROCEDURE

Read and comply with the instructions below, then complete Section 4 (State the Problem) on the reverse side. >>>

- Only one request for an administrative remedy must be submitted on this form.
- The request for an administrative remedy and the action sought should be stated simply and coherently.
- The length of this request for an administrative remedy shall be restricted to the space available in Section 4 and one (1) additional 8 1/2 x 11 inch page.
- This request for an administrative remedy must be free of obscene or vulgar language or content.
- This request for an administrative remedy must be filed by the inmate who is personally affected by the subject of the request and shall not be filed by an inmate on behalf of another.
- A repetitive request for administrative remedy may not be filed by the same inmate when a final response has been provided and there has been no change in any circumstances that would affect the response; or when the initial request for an administrative remedy is still in process.

## SECTION 3     DISCIPLINARY SECTION – Complete this Section for a Disciplinary Appeal ONLY

You may file a Disciplinary Appeal ONLY if you have pleaded not guilty and have been found guilty at a disciplinary hearing. If so, complete this section; then complete Section 4 (State the Problem) on the reverse side. >>>

Offense:      Report date:

Facility where hearing was conducted:      Date of hearing:

Did you have an advocate?  ☐ yes ☐ no   If yes, name of advocate:

Did you identify witness(es) to the investigator? ☐ yes ☐ no  Did your witness(es) testify? ☐ yes ☐ no

Name(s) of any witness(es):

| **CONFIDENTIAL** | Inmate name: | Santos de Jesús Candelaria |
|---|---|---|
| **(FOR OFFICIAL USE ONLY)** | Inmate number: 362958 | Housing: G-206 |

**SECTION 4**     STATE THE PROBLEM AND REQUESTED RESOLUTION

Provide any factual information that is applicable, including any responses from staff. State the action that you think should be taken to resolve the problem. PLEASE PRINT. Espere que la Atendes de cion de este Asunto Personal que Tiene. Con Santos 362958, en los Predio de Comunicacion y bade Televisi y Radio. Por la razon que Ae hen Puesan Para que Yo Tengan Ha Hube Con el Sitema de un Chip Contuladors bajo Texto de Telefono. i con el Sitema de Chip. en A. Cuello ayin de el Tomago. i Testiculo cuando Yo no Tengo el Control del Sitema de Chip de la confutadora de Dan Cann. Ello Tiene el Control de Chip. que esta Base de una Biblinconetada en Al cuerlo Para Experimento de Medicina. sobre Mi cuerPo Soy un experimentado los cigintifico de la ciencia de la extiolamia de la Tenelojia de la. ciencia de Forence DNAY No Mecientopolicejado. con el Cidema Delais of Photo Transduction in Yed Photory colors de la ciencia Tolerazon que Me no obligan a Tener Sexo. Cuando Yo no quick Tenese sexo Me ofende en el Predio de Televisai Radio diciendo Me HomoSexual. Cuando Yo lo Soy. eso es Problemte es Alas ok. hora. al dia i eso es un Maltrato. Hacia Mi Persona. Fisica. Menta i betbl i Tan bien el Precidente de la nacion. Americana i el Precidente de estado de Connecticut estan Permitiendo el Maltrato de los Confinada en los Predio de Correcion. i el Parlamento de correcion Tiene conocimiento de los Maltrat con mucho Presa i como Yo esTay. Pasando. Mucho. Tanbien Auem los Tienen eso no los Saben. Pero Yo los esbis To i Yo Ilebacon estes Sitema. Y Ano con el Chip de la confermada del Preso. Pol el Juego de Tentego Mento de la ciencia extalce jandome. Para Tenel Sexo. Poreco. Mendico. Con el Sitema de Chip. en de Paltamento de Justicia. Tiene conocimiento de este Maltrato. Cuando Me Mental. Cuando Yo los oficirte culpa ble de un caso de Yo dia. con fraude i conPiracion. con Dancann i el Meise un ague Yo Recante su Curpa ble de un caso de Yodia. corto diciendo. que Yo Soy un Paciente de Mental. Cuando Me lo. Por Yo es falso. de Droga. que Yo di Positivo. asi. cecnim que era un Traifa Sit i Medicion. Inmo i Presenta Te Papete falso. de Droga. que Yo di Positivo. asi. cecnim en Mi ProbaTovia cuando No Di. Ni uno en la colte de New Britan. Cuando Me violaren Todo Mide reconc de Justicia. en la colTe SuPerio de Bridgport. esTa Son los. Nonbre doctay. Dr. Ris i Yansen. colon. las guer folcejean a Tenel Sexo. Cuando Yo esTay Preso. Porque el de Paltamento de Correcion. Me fabricaun caso de Assaul DOC. Pol el Chip de Miestoga. Aqi eso es conPiracion de Correcion i Dan Cann. i el de Parla Mento de Policia.

| Inmate signature: *Santos de Jesús Candelaria Jr.* | Date: 2-12-14 |
|---|---|

**For all remedies except health services, deposit this form in the Administrative Remedies box.**
**For a health services issue, deposit this form in the Health Services box.**

**SECTION 5**     DECISION / OFFICIAL USE ONLY – DO NOT WRITE IN THE SPACE BELOW

| Date Received: 3/10/14 | IGP #: | T#: |
|---|---|---|

Disposition: Returned without disposition     Date of Disposition: 3-28-14

Reason:
See attached



Details of phototransduction in rod photoreceptors

☐ You have exhausted DOC's Administrative Remedies.

| Signature: CC Marino | Date: 3-28-14 |
|---|---|

| | **Medical Incident Report**<br>**Connecticut Department of Correction** | | CN 6602<br>REV 6/30/09 |
|---|---|---|---|

| Facility/Unit: Northern CI | Report date: 01/18/11 | Time: 10:00 ☑ am ☐ pm |
|---|---|---|

| Name of patient: Cadeleria, Jose | Inmate number (if applicable): 362988 |
|---|---|

Medical staff name: Mark Frayne, PsyD

| Incident report submitted: ☐ yes ☐ no | Report number: | Date: |
|---|---|---|

Treatment location: Infirmary Cell #3

**Injury description:**
None. The inmate moves in and out refusing food, pointing out to staff that his food is poisoned and/or tampered with.

**Assessment:**
Looking deeper in his records, consultation with Garner staff, and how the inmate generates detailed psychotic symptoms, strongly suggests that he is simply avoiding housing. Although he made it to Phase 2, the inmate suddenly stopped his progression, and began generating symptoms.

**Treatment administered:**
Verbal intervention with Dr. Gagne.

**Required follow-up:**
Mental Health 3 protocols.

**Observations/remarks:**
The inmate is now detailing symptoms, and requesting his food be served a specific way, in order for him to feel better, it is unlikely the inmate is actually psychotic at this time, with how he needs to detail symptoms. Instead, he appears anxious to return to AS housing – whereas we did not see this from him before.

**Chemical agent review prior to planned use of force:**
The offender's health record was reviewed prior to planned use of force. There were no contraindications noted regarding or precluding the use of chemical agents (i.e. history of cardiac or respiratory condition, eye condition under active treatment, or documented prior severe and unexpected reaction to chemical agents).
Known contraindications based on review of health record?   ☐ yes   ☐ no

**Placement after treatment:**
☑ Inmate is cleared for General Population Placement        ☐ Inmate is cleared for Restrictive Housing Placement
☐ Inmate is not cleared for Restrictive Housing Placement   ☐ Other (specify):

| Patient signature: Unable | Date: |
|---|---|
| Medical staff signature: Mark Frayne, PsyD | Date: 01/18/11 |
| Custody supervisor signature: | Date: |



# Medical Incident Report
## Connecticut Department of Correction

CN 6602
REV 6/30/09

| Facility/Unit: Northern Correctional Institution | Report date: 01/09/2011 | Time: 8:00 | ☐ am | ☑ pm |

Name of patient: Cadelaria, Jose | Inmate number (if applicable): 362958

Medical staff name: Jill Haga, LPC

Incident report submitted: ☐ yes ☐ no | Report number: | Date:

Treatment location: 3 East Medical Screening

**Injury description:**

Inmate has not eaten for four days reporting he is hearing voices of Jesus, a demon, and a chip in his stomach telling him not to eat. Inmate denies self ideation, no cutting observed. *N Not To The Voices*

**Assessment:**

Inmate appears to have lost weight secondary to not eating. I/M reporting A/H. Speech and thoughts appear disorganized.

**Treatment administered:**

Inmate admitted to the infirmary for mental health observation with full privileges to monitor eating habits and psychotic symptoms per Dr. Mitra. Inmate may have regular jumpsuit, mattress, blanket and Bible with regular meals.

**Required follow-up:**

Follow up per mental health protocol.

**Observations/remarks:**

**Chemical agent review prior to planned use of force:**
The offender's health record was reviewed prior to planned use of force. There were no contraindications noted regarding or precluding the use of chemical agents (i.e. history of cardiac or respiratory condition, eye condition under active treatment, or documented prior severe and unexpected reaction to chemical agents).
Known contraindications based on review of health record? ☐ yes ☐ no

Placement after treatment:

☐ Inmate is cleared for General Population Placement | ☐ Inmate is cleared for Restrictive Housing Placement
☐ Inmate is not cleared for Restrictive Housing Placement | ☐ Other (specify):

Patient signature: | Date:

Medical staff signature: Jill Haga, LPC | Date: 01/09/2011

Custody supervisor signature: | Date:

Administrative Remedy

I/M Santos #362958

This Administrative Remedy form is being returned to you for the following reason.

✓ No documentation of an attempt to informally resolve this through the sick call process. Complete an Inmate Request Form stating the specific problem, what has been done to resolve the problem and what you expect to be done for the problem.

✓ description of the problem is either unclear or not specific

—— this issue should be addressed through the sick call process

✓ no clearly identified **single issue**

—— this is a custody issue

—— other.

3/19/14

| **CONFIDENTIAL**<br>**(FOR OFFICIAL USE ONLY)** | Inmate name: Santos José-Candelaria de Jesús | |
|---|---|---|
| | Inmate number: 362958 | Housing: G-206 |

**SECTION 4** — **STATE THE PROBLEM AND REQUESTED RESOLUTION**

Provide any factual information that is applicable, including any responses from staff. State the action that you think should be taken to resolve the problem. PLEASE PRINT. Para el de Partamento de Federal, espero cuando reciba esta información de J. Santos de Jesús Candelaria, que tomen una desición correcta de este asunto. que estiendan que yo fui infectado con un sistema de el Partamento de Policía en año 2010-2011 en la Prición NCI con un de Monio - Chip en ta Mayor [illegible] taria del mientro. Cuando no me dieron conocimiento de chip. Cuando llo tenía que tener conocimiento de site ma de Policía tenía que firmar el Papel. no tiene mi firma, yo estando en la libre comunidad el de Partamento de Policía i Federal i estatal no me diero conocimiento de que yo le estaba silviendole a ello cuando llo cometí errore en la libre comunidad bendiendo Droga y Robe polque busque trabajo y no parecía aun. llo entiendo que si yo tubiera conocimiento que yo estaba conectado y silbiendo al de Partamento de Policía yo no asir esto errore de tener contacto con la justicia. Polo tanto yo entiendo que el de Partamento tiene fondo Federal para la en Preza que son Mundial de Policía para suplile trabajo y dinero. Polo tanto yo estube en la calle duimiendo con mi muger en un carro 6 meses i buscando trabajo y la unica manera que estube que bendel Droga i Robal para tener un apartamento donde dormir en un invierno y el de Partamento de Policía no me dio la mano cuando llo le estaba silviendo al de Partamento de Federal en año 2012 día 12-24-12 que ya salí de la Prición me dieron un papel notificando que yo le estoy dando confimación al de Partamento FBI de Massachusey. este sistema es conectado con la Biblia cuando el de Partamento de Federal permitie que llo bendiera Droga y Robara cuando llo estaba en necesidad de dinero y le pedí a Dios y el me prometio un dinero y el de Partamento Federal ahora este enojado con migo pol el dinero que me prometio Dios y me tiene preso para eso. Polo tanto cuando bendí Droga y Robaba hoy si ero no Dios si no me dejara que cometiera crimen. con el de Partamento de Justicia que es una persona inventosible [illegible] biendo las cosas y no tome una desición correcta para conectarse conmigo personal, polque el tenía conocimiento de mi telefono para comunicase polque el me no salva y me ola y patrocino el contra bando de Droga y Robo que sella me corrución y sabono y alto pelbesibo con mi pareja y bulga mente en los predio de comunicación en los radio y televisor borie en preza di bulgando mi personalidad con mi pareja diciendo que llo soy ta[illegible] cuando no le soy. Cuando salí de la carcel NCI 12-24-12 me dejaron en la calle pasando necesidade estoy un mes sin la tajeta de leTado polque me la cancelaron y estube que Robal para comer y viví un [illegible] do en un piso con madera i barde casi dos meses y le mando la copia de informe de medico Reporte de CNIP.

| Inmate signature: Santos de Jesús Candelaria J. | Date: 2-10-14 |
|---|---|

**For all remedies except health services, deposit this form in the Administrative Remedies box.**
**For a health services issue, deposit this form in the Health Services box.**

**SECTION 5** — **DECISION / OFFICIAL USE ONLY – DO NOT WRITE IN THE SPACE BELOW**

| Date Received: 3/16/14 | IGP #: | T#: |
|---|---|---|
| Disposition: | Date of Disposition: | |

Reason: Returned to I/M

☐ You have exhausted DOC's Administrative Remedies. ☐ This matter may be appealed to:

| Signature: [signature] | Date: 3/19/14 |
|---|---|



# Inmate Administrative Remedy Form
## Connecticut Department of Correction

CN 9602
REV 2/16/12

| | |
|---|---|
| Facility/Unit: Garner D.O.C | Date: 2-10-14 |
| Inmate name: Santos | Inmate number: 362958 |

| **SECTION 1** | **SELECT ADMINISTRATIVE REMEDY A, B or C BELOW.** |
|---|---|

Follow the instructions *(for property claims, complete form CN 9609, Lost/Damaged Property Investigation Form and deposit in the 'Administrative Remedies' box).*

**A.** ☒ **I am filing a Grievance.**
Prior to filing a grievance, you must attempt informal resolution. Attach a copy of CN 9601, Inmate Request Form with the staff member's response <u>OR</u> state in Section 4 the reason why the form is not attached. Grievances must be filed within 30 days of the occurrence or discovery of the cause of the grievance.   >   Refer to Section 2 below

**B.** ☐ **I am requesting a Health Services Review:**   ☐ Diagnosis/Treatment   >
                                                        ☐ All Other Health Care Issues   >   Complete Section 4   >>>>

**C.** ☐ **I am filing an Appeal of a (select one below):**
Appeals must be filed within 15 days of notification of a decision.

| ☐ Disciplinary Action | | > | Complete Section 3 below |
|---|---|---|---|
| ☒ Special Management Decision | ☐ Classification Decision | | |
| ☐ Media Review Committee Decision | ☐ Furlough Decision | > | |
| ☐ Security Risk Group Designation | ☐ ADA Decision | > | Complete Section 4   >>>> |
| ☐ Determination of Grievance Process Abuse | ☐ Rejection of Outside Tapes/CDs | > | |
| | ☐ Rejection of Correspondence | | |

| **SECTION 2** | **OTHER REQUIREMENTS FOR USING THE INMATE ADMINISTRATIVE REMEDY PROCEDURE** |
|---|---|

Read and comply with the instructions below, then complete Section 4 (State the Problem) on the reverse side. >>>

- Only one request for an administrative remedy must be submitted on this form.
- The request for an administrative remedy and the action sought should be stated simply and coherently.
- The length of this request for an administrative remedy shall be restricted to the space available in Section 4 and one (1) additional 8 1/2 x 11 inch page.
- This request for an administrative remedy must be free of obscene or vulgar language or content.
- This request for an administrative remedy must be filed by the inmate who is personally affected by the subject of the request and shall not be filed by an inmate on behalf of another.
- A repetitive request for administrative remedy may not be filed by the same inmate when a final response has been provided and there has been no change in any circumstances that would affect the response; or when the initial request for an administrative remedy is still in process.

| **SECTION 3** | **DISCIPLINARY SECTION – Complete this Section for a Disciplinary Appeal ONLY** |
|---|---|

You may file a Disciplinary Appeal **ONLY** if you have pleaded not guilty and have been found guilty at a disciplinary hearing. If so, complete this section; then complete Section 4 (State the Problem) on the reverse side. >>>

| Offense: | Report date: |
|---|---|
| Facility where hearing was conducted: | Date of hearing: |

| Did you have an advocate?   ☐ yes   ☐ no | If yes, name of advocate: | | |
|---|---|---|---|

| Did you identify witness(es) to the investigator?   ☐ yes   ☐ no | Did your witness(es) testify?   ☐ yes   ☐ no |
|---|---|

Name(s) of any witness(es):

**INFORMATION**
JD-CR-71 REV. 3-11

STATE OF CONNECTICUT
**SUPERIOR COURT**

3/25

| Disposition date | |
|---|---|

| Police Case number | Agency name | Agency number |
|---|---|---|
| 1200621987 | CSP TROOP C | C600 |

## Title, Allegation and Counts

| State of Connecticut vs.(Name of accused) | Residence (Town) of accused | Docket number |
|---|---|---|
| Santos, Jose | New Britain | |

| Address | | Date of birth | The undersigned Prosecuting Authority of the Superior Court of the State of Connecticut charges that: |
|---|---|---|---|
| 111 Franklin SQ | | 03/02/1984 | |
| To be held at (Town) | Geographical area number | Court date | |
| ROCKVILLE | 19 | | |

| Count One — Did commit the offense of: | | | Continued to | Purpose | Reason |
|---|---|---|---|---|---|
| ASLT PUBLIC SAFETY/EMERG PERSONNEL | | | | | |
| At (Town) | On or about (Date) | In violation of General Statute number | | | |
| Somers | 11/01/2012 | 53a-167c | | | |
| Count Two — Did commit the offense of: | | | | | |
| | | | | | |
| At (Town) | On or about (Date) | In violation of General Statute number | | | |
| | | | | | |
| Count Three — Did commit the offense of: | | | | | |
| | | | | | |
| At (Town) | On or about (Date) | In violation of General Statute number | | | |
| | | | | | |

☐ See other sheet for additional counts

Date 02/14/13

Signed (Prosecuting Official)

## Court Action

| Defendant advised of rights before plea | Bond | Surety | | 10 % | Election | (Date) |
|---|---|---|---|---|---|---|
| (Judge)      (Date) | | | | Cash | ☐ CT ☐ JY | |
| ☐ Attorney ☐ Public defender   Guardian | Bond change | | | | Seized property inventory number | |
| | 100,000 This case only | | | | | |

| Count | Plea date | Plea | Plea withdrawn Date / New plea | Verdict finding | Fine | Remit | Additional disposition |
|---|---|---|---|---|---|---|---|
| 1 | | | | | $ | $ | |
| 2 | | | | | $ | $ | |
| 3 | | | | | $ | $ | |

| Date | Other Court Action | Judge |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

| Receipt number | Cost ☐ IMP ☐ NCI | Bond information ☐ Bond forfeited | ☐ Forfeiture vacated | ☐ Forfeiture vacated and bond reinstated |
|---|---|---|---|---|
| Application fee - receipt number if paid | Circle one W I Q | Program fee - receipt number if paid | Circle one W I Q   Probation fee - receipt number if paid | Circle one W I Q |
| Prosecutor on original disposition | Reporter/monitor on original disposition | Signed (Clerk) | Signed (Judge) | |

*This is page 1 of a 2 page information*

| ARREST WARRANT APPLICATION | | STATE OF CONNECTICUT | | For Court Use Only | |
|---|---|---|---|---|---|
| JD-CR-64b   Rev. 3-11 | | SUPERIOR COURT | | Supporting Affidavits sealed | |
| C.G.S §§54-2a | | www.jud.ct.gov | | Yes | No |
| Pr. Bk. Sec. 36-1, 36-2, 36-3 | | | | | |

| Police Case number | Agency name | | | Agency number | |
|---|---|---|---|---|---|
| 1200621987 | CSP TROOP C | | | C600 | |

| Name (Last, First, Middle Initial) | Residence (Town) of accused | Court to be held at (Town) | Geographical | 19 |
|---|---|---|---|---|
| Santos, Jose | New Britain | ROCKVILLE | Area number | |

## Application For Arrest Warrant
**To: A Judge of the Superior Court**

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts
set forth in the:   | Affidavit Below.   | X | Affidavit(s) Attached.

| Date | Signed (Prosecuting authority) | Type/print name of prosecuting authority |
|---|---|---|
| 02/14/13 | | MATTHEW C. GEDANSKY |

## Affidavit

**The undersigned affiant, being duly sworn, deposes and says:**

1. This affiant, Trooper Gershowitz #800 is a regular sworn member of the Connecticut State Police Department
and has been a member of said department since July of 1998. This affiant is presently assigned as Detective
and prison liaison at Troop "C" in Tolland, where the affiant has investigated similar crimes as set forth below.
That the facts contained herein are stated from personal knowledge and from knowledge gained from brother
troopers acting in their official capacity.

2. That on 11/1/12 Troop-C was contacted by Northern C.I in Somers, CT and advised of an assault between
inmate and staff members at the prison. Tpr Hunter responded to the incident and stated it involved Inmate
Jose Santos (DOB 03/02/1984) #362958 and Correctional Officer Jonathan Vose. Tpr Hunter reported that
Inmate Santos spit in C/O Vose's face as Vose was attempting to restrain him to escort him to the showers. Tpr
Hunter explained that Vose received in house medical treatment.

*Before the Shower*

3. That upon Tpr Hunter's arrival he spoke to correctional officer Jonathan Vose who explained that on 11/1/12
at approximately 5:22 pm he was working in the 3 West housing unit at Northern CI in Somers. Vose explained
that he was assisting C/O St. Pierre escorting inmates to the showers. Vose explained that when they got to
cell #221 inmate Jose Santos #362958 refused to cuff up for his shower. Vose explained that they advised
Santos several times to comply with being restrained but Santos refused. Vose explained that they called the
floor supervisor. Vose explained that upon Lt Anaya's arrival Santos cuffed up and was escorted to the shower.

*No mention of spit. Before shower*

*I was afraid that the C/O's were going to beat me up. When Lt Anaya's came I felt safe and went to the shower.*

*This is page 1 of a 3 page Affidavit*

| Date | Signed (Affiant) JAY GERSHOWITZ |
|---|---|
| 2/12/13 | #800 |

| Jurat | Subscribed and sworn to before me on (Date) | Signed (Judge/Clerk, Commissioner of Superior Court, Notary Public) |
|---|---|---|
| | 2-12-13 | |

## Finding

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and
considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that
an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the
issuance of a warrant for the arrest of the above-named accused.

| Date and signature | Signed at (City or town) | On (Date) | Signed (Judge / Judge Trial Referee) | Name of Judge/Judge Trial Referee |
|---|---|---|---|---|
| | Rockville | 2/19/13 | | Kwak |

ARREST WARRANT APPLICATION
JD-CR-64a   Rev. 3-11
C.G.S § 54-2a
Pr. Bk. Sec. 36-1, 36-2, 36-3
CFS #:   1200621987

STATE OF CONNECTICUT
SUPERIOR COURT
www.jud.ct.gov

CSP TROOP C

| Name (Last, First, Middle Initial) | Residence (Town) of accused | Court to be held at (Town) | Geographical |
|---|---|---|---|
| Santos, Jose | New Britain | ROCKVILLE | Area number 19 |

Affidavit - Continued    *Weapon found on cell or shower? Another lie*

*Where is the DR for such incident?*

Vose explained that at that time a search of Santos' cell was performed due to him recently being found with a weapon in his cell. Vose explained that about four weeks ago he had found a shank made out of a toothbrush that Santos had left in the shower. Vose explained that he felt that Santos remembered it was Vose that found it. Vose explained that Santos was escorted back to his cell after his shower and he instructed Santos to lie face down on his bunk so they could take off the restraints. Vose explained that he further instructed Santos to remain on the bunk until they exited the cell. Vose explained that prior to him exiting the cell Santos began to get up from his bunk. Vose explained that he restrained Santos back onto the bunk and told him not to get up. Vose explained that Santos began to resist and turned his head towards him and spit in his face and on his neck. Vose explained that he secured Santos against one of the walls and Santos kept resisting and attempting to spit on him. Vose explained that Santos was eventually secured. Vose explained that shortly after the incident he began to experience back spasm and pain in his left wrist along with a minor cut.

*Statement changes to spit + no evidence on video.*

4. That C/O St Pierre reported that he was with C/O Vose during the time of this incident. St Pierre explained that inmate Santos was escorted back to his cell after his shower and that he was instructed to lie face down on his bunk so that they could take off the restraints. St Pierre explained that as they exited the cell, inmate Santos became aggressive and non compliant. St Pierre explained that they secured Santos and he began to resist. St Pierre explained that Santos turned his head towards Vose and spit in Vose's face and on his neck. St Pierre explained that Santos was eventually secured and more staff arrived to assist.

*evidence of their assault on me.*

5. That Lt Anaya explained that C/O Vose was treated by the prisons medical unit and it was suggested by them that he seek outside treatment for his exposure. Lt Anaya explained that the incident was not captured by the prison N.I.C.E surveillance system.

6. That Tpr Hunter explained that he made *called* attempts to talk to Inmate Santos but Santos refused to talk to him in regards to this incident. On 2/1/13 another attempt to talk to inmate Santos was made by this affiant but Santos refused to answer when asked if he wanted to talk to the state police.    *I was released on 12/24/2012*
*New Britan. Court. Arrest. Date. 3/5/13*    *No Make in the site*

*Sworn officer lied because not incarcerated on such date. I was no more.*

7. That on 11/8/12 this affiant had the victim sign an Authorization To Disclose Health Information form (DPS-198-C) to obtain his medical records from Johnson Memorial Hospital. On 12/11/12 the Medical Records department at Johnson Memorial Hospital supplied this affiant with 16 pages of Vose's medical records from his treatment on 11/1/12. These records indicate that Vose was seen at the emergency room on 11/1/12 for his bodily fluid exposure and hand and back pain which occurred during an assault. Blood work was performed and resulted in non reactive results. According to these records a non reactive HIV-1/2 antibody does not exclude

*7 dia despues*

This is page 2 of a 3 page Affidavit

| Date | | Signed (Affiant) |
|---|---|---|
| 2/12/13 | | |
| urat | Subscribed and sworn before me on (Date) 2-12-13 | Signed (Judge / Clerk Commissioner of Superior Court, Notary Public) |
| eviewed (Prosecutorial official) | Date 02/14/13 | Reviewed (Judge / Judge Trial Referee) Date 2/19/13 |

ARREST WARRANT APPLICATION

JD-CR-64a   Rev. 3-11
C.G.S § 54-2a
Pr. Bk. Sec. 36-1, 36-2, 36-3
CFS #:  1200621987

STATE OF CONNECTICUT
SUPERIOR COURT
www.jud.ct.gov

CSP TROOP C

| Name *(Last, First, Middle Initial)* | Residence*(Town)*of accused | Court to be held at *(Town)* | Geographical Area number |
|---|---|---|---|
| Santos, Jose | New Britain | ROCKVILLE | 19 |

### Affidavit - Continued

HIV infection since the time frame for seroconversion is variable. The hospital recommended that Vose follow up with his doctor in a couple days due to the exposure and if he had any future pain.

8. That the Disciplinary Investigation Report from the Department of Corrections states that inmate Santos stated "I did not spit". Based upon Northerns investigation it was recommended that inmate Santos be found guilty of Assault on a Department of Correction Employee.

9. That Inmate Jose Santos is currently serving a 1 year sentence for Violation or Probation at Northern C.I. Inmate Santos has a long disciplinary history during his stay in the Connecticut Prison System that includes 40 total tickets: Interfering with Security, Assault on DOC employee and Contraband. Santos also has a criminal history which includes: Robbery, Assault, Violation of Probation, among others.

10. Whereas, the undersigned requests that a warrant be issued for the arrest of Jose Santos (DOB 03/02/1984) for crimes in violation of Connecticut General Statues.

11. That this warrant has not been applied for or presented in any other court.

*(This is page 3 of a 3 page Affidavit)*

| Date | 2/12/13 | Signed *(Affiant)* | |
|---|---|---|---|
| Jurat | Subscribed and sworn before me on *(Date)* 2/12/13 | Signed *(Judge/Clerk, Commissioner of Superior Court, Notary Public)* | |
| Reviewed | *(Prosecutorial Official)* | Date 2/14/13 | Reviewed *(Judge / Judge Trial Referee)* | Date 2/19/13 |



# Disciplinary Report
## Connecticut Department of Correction

CN 9503/1
REV 6/19/12

Facility/Unit: NCI

Report date: 11 / 1 / 12

Inmate name: Santos Jose

Inmate number: 362958

Housing unit: 3west

Location of incident: 3west cell 221

Report number: NCI 1211003

Incident date: 11/1/12

Incident time: 515 ☐ am ☒ pm

Offense: Assault ON DOC employee

Offense class: ☒ A ☐ B ☐ C

Description of violation:
On 11/1/12 at appr 515P.m while this officer was returning i/m Santos Jose to his cell 221 with custody staff i/m Santos was directed to stay on his bunk after leg restraints were removed. i/m Santos became non compliant and resistant, turned his head and assaulted this officer with spit. A code orange was called at this time

Witness(es):

Physical evidence:

Reporting employee (print): Jose

Title: C/o

Reporting employee (signature):

Date: 11 / 1 / 12   Time: 1130 ☐ am ☒ pm   Employee requests copy: ☒ yes ☐ no

### CUSTODY SUPERVISOR / UNIT MANAGER REVIEW

☐ Administrative Detention

Date:

Time: ☐ am ☐ pm

☐ Accused inmate interviewed

☐ Informal disposition

Custody Supervisor / Unit Manager name (print): LT Shany

Custody Supervisor / Unit Manager signature: LT S Shany

Title: LIEUTENANT

Date: 11/2/12

Time: 1235 ☐ am ☒ pm

### INMATE NOTICE

Delivered by (print): M. Massa

Delivered by (signature):

Title: C/o

Date: 11-02-12

Time: 1250 ☐ am ☒ pm



# Disciplinary Report
## Connecticut Department of Correction

CN 9503/2
REV 6/19/12

| Investigator: | Receipt date: 11/2/12 | Time: 130 ☐ am ☒ pm |
|---|---|---|

Attempt, accessory and conspiracy: When supported by the evidence, the offenses of attempt, accessory and conspiracy shall be deemed to be included in the substantive offense without having to be separately charged. Attempt, accessory and conspiracy shall be punishable in the same degree as if the substantive offense were committed.

## CLASS A OFFENSES

| | | |
|---|---|---|
| Alteration of a specimen | Destruction of property ($100 or more) | Refusal to give a specimen |
| Arson | Escape | Riot (declaration by DOC Commissioner) |
| Assault | Felonious misconduct | Secreting identity |
| Assault on a DOC employee | Fighting | Security risk group affiliation |
| Bribery | Flagrant disobedience | Security risk group safety threat |
| Contraband (dangerous instrument, | Hostage holding | Security tampering |
| escape item, unauthorized currency, | Hostage holding of a DOC employee | Self-mutilation |
| drug and/or tobacco, drug and/or | Impeding order | Sexual misconduct |
| tobacco paraphernalia, intoxicating | Interfering with safety or security | Theft ($100 or more) |
| substance, tattoo equipment, wireless | Intoxication | Threats |
| communication device or component) | Possession of Sexually Explicit Materials | Violation of program provisions |
| Creating a disturbance | Public indecency | |

## CLASS B OFFENSES

| | | |
|---|---|---|
| Bartering | Destruction of property (under $100) | Insulting language or behavior |
| Causing a disruption | Disobeying a direct order | Misdemeanant misconduct |
| Contraband (unauthorized items, items in | Gambling | Out of place |
| excess of authorized amounts. | Giving false information | Theft (under $100) |

## CLASS C OFFENSES

| Disorderly conduct | Malingering | Sanitary/housing violation | Violation of unit rules |
|---|---|---|---|

### Waiver of 24-hour Notice

I hereby waive my right to a 24-hour notice of hearing, and request that a hearing be held at the earliest convenience of the hearing officer.

| Inmate signature: | Date: |
|---|---|
| Witness signature: | Date: |

### Waiver of Appearance

I hereby waive my appearance at the disciplinary hearing. This does not constitute a guilty plea.

| Inmate signature: | Date: |
|---|---|
| Witness signature: | Date: |

### Guilty Plea

I hereby plead guilty to the charge contained in this disciplinary report. I voluntarily enter this plea and understand that my plea bars an appeal.

| Inmate signature: | Date: |
|---|---|
| Investigator/hearing officer signature: | Date: |
| ☐ Prosecution deferred by disciplinary coordinator | Through date: |
| Disciplinary coordinator signature: | Date: |
| Inmate signature: | Date: |

# Disciplinary Investigation Report
## Connecticut Department of Correction

CN 9505/1
REV 9/1/08

| Facility/Unit: NORTHERN C. I. | Report number: NCI- 1211003 | Report date: 11-1-12 |
|---|---|---|
| Inmate name: SANTOS, JOSE | Inmate number: 362958 | Housing: 3W-221 |

Investigator: LEONE

Advocate: MC CORMACK

Date advocate notified: 11-2-12

☐ Inmate declines use of advocate

| Inmate signature: | Date: |
|---|---|

### ACCUSED INMATE INTERVIEW

Inmate informed of process of investigation and hearing: ☒ Yes ☐ No

Inmate's version of incident:
I/M SANTOS STATED THAT HE DID NOT SPIT.

### INMATE WITNESS REQUEST

Inmate requests witness(es): ☐ Yes ☒ No

If NO, inmate signature: I/M ON IN-CELL RESTRAINTS 1W-102    Date: 11-2-12

If YES, list witness(es) below and have witness(es) complete CN 9511, Inmate Witness Statement Form & attach.

| Inmate name: | Inmate number: |
|---|---|
| Inmate name: | Inmate number: |
| Inmate name: | Inmate number: |



# Disciplinary Investigation Report
## Connecticut Department of Correction

CN 9505/2
REV 9/1/08

## SUMMARY

Facts:

OFFICER VOSE STATES IN HIS DISCIPLINARY REPORT THAT AFTER DIRECTING I/M SANTOS TO LAY DOWN ON HIS BUNK FOR LEG IRON REMOVAL, THE I/M ATTEMPTED TO GET UP AFTER LEG IRONS WERE REMOVED AND STAFF STARTED TO EXIT THE CELL.

- OFFICER VOSE DIRECTED I/M SANTOS TO REMAIN ON THE BUNK UNTIL THE CELL DOOR WAS SECURED. AS I/M SANTOS BEGAN TO GET UP FROM HIS BUNK OFFICER VOSE REPEATED HIS DIRECT ORDER TO REMAIN LAYING DOWN AND DIRECTED THE I/M BACK TO THE BUNK. THE INMATE HANDBOOK SECTION 1:5 STATES: Restraint Policy  The inmate will be directed to lie on the bottom bunk, face down, and crossed ankles. Leg irons will be removed and inmate will remain face down until staff exits the cell and the door is secured.

- I/M SANTOS BECAME ACTIVELY RESISTANT AS OFFICER VOSE DIRECTED HIM BACK TO THE BUNK, TURNING HIS HEAD AND SPITTING AT OFFICER VOSE STRIKING THE SIDE OF HIS FACE AND NECK. THIS ACUTELY NON-COMPLIANT BEHAVIOR RESULTED IN A *CODE ORANGE* AND IS CONSISTENT WITH AD 9.5 12D: Assault on a Department of Correction Employee. Intentionally striking or  attacking a Department of Correction employee with or without the use of an object or substance or behaving in such a reckless manner that one's actions causes a strike of a Department of Correction employee.

- PRECEEDING THIS INCIDENT, I/M SANTOS WAS NON-COMPLIANT TO OFFICER VOSE'S DIRECT ORDER TO SUBMIT TO RESTRAINT APPLICATION IN ORDER TO BE REMOVED FROM HIS CELL FOR A HIGH SECURITY SHAKEDOWN. A SUPERVISOR CONVINCED HIM TO CUFF UP.

Conclusion:

BASED UPON STAFFS WRITTEN REPORT, INFORMATION GATHERED, AND ADVOCATE INVESTIGATION, THE FACILITY RECOMMENDS A GUILTY FINDING WITH THE FOLLOWING SANCTIONS AND PENALTIES:

   **30 P.S.**
   **90 L.O.P.**
   **60 L.O.V.**
   **55 R.R.E.C.**

- *I/M SANTOS IS AN MH3, IS IN VIOLATION OF AD 9.5 SECTION 10E, AND IS SENTENCED.*

## INVESTIGATOR RECOMMENDATIONS

| | Reason: |
|---|---|
| ☐ recommend deferred prosecution | TO DETER FUTURE MISCONDUCT |
| ☐ recommend dismissal | |
| ☐ recommend substitute charge | |
| ☒ other, specify: SANCTION/PENALTIES INDICATED ABOVE | |

Investigator signature:   LEONE

Date: 11-14-10

Copy:  inmate master file

# Disciplinary Investigation Report
## Connecticut Department of Correction

CN 9505/1
REV 9/1/08

| | | |
|---|---|---|
| Facility/Unit:   NORTHERN C. I. | Report number:   NCI- 1211003 | Report date: 11-1-12 |
| Inmate name:   SANTOS, JOSE | Inmate number:   362958 | Housing:   3W-221 |
| Investigator:   LEONE | Advocate:   MC CORMACK | |
| Date advocate notified:   11-2-12 | ☐ Inmate declines use of advocate | |
| Inmate signature: | Date: | |

### ACCUSED INMATE INTERVIEW

Inmate informed of process of investigation and hearing:    ☒ Yes    ☐ No

Inmate's version of incident:
I/M SANTOS STATED THAT HE DID NOT SPIT.

### INMATE WITNESS REQUEST

Inmate requests witness(es):    ☐ Yes    ☒ No

If NO, inmate signature:    I/M ON IN-CELL RESTRAINTS 1W-102    Date:   11-2-12

**If YES, list witness(es) below and have witness(es) complete CN 9511, Inmate Witness Statement Form & attach.**

| Inmate name: | Inmate number: |
|---|---|
| Inmate name: | Inmate number: |
| Inmate name: | Inmate number: |

Original in chart
Copy for inmate

HR520 Rev 3/20/2013
CONNECTICUT DEPARTMENT OF CORRECTION
UNIVERSITY OF CONNECTICUT HEALTH CENTER
CORRECTIONAL MANAGED HEALTH CARE

MH INVOLUNTARY MEDICATION PANEL
WRITTEN RESPONSE TO INMATE

| NUMBER 362958 | DOB 3/2/84 |
| NAME Santos, Jose | |
| SEX M | RACE/ETHNIC + | FACILITY GC |

TO BE COMPLETED BY THE PANEL PSYCHIATRIST

DATE & TIME   10/29/13 — 10:30 Am

INMATE NAME   Jose Santos

INMATE ADVISOR   K. Bissette, CSW

An Involuntary Medication Panel was held on ___10/29/13___ to

determine if your treating psychiatrist or APRN would be given permission to administer

involuntary medication.  The result of the panel is as follows:

☐ INVOLUNTARY MEDICATION **WAS** AUTHORIZED.

☒ INVOLUNTARY MEDICATION **WAS NOT** AUTHORIZED.

If you have any questions please speak with your Inmate Advisor. You have the right to appeal
the decision to involuntarily medicate. Within 24 hours of receiving this form, if you wish to appeal,
please sign and date the attached Appeal Form HR 521. You may include reasons for your appeal of
the panel's decision.

_Panel Psychiatrist Signature_                          10/29/13
                                                         Date

### ACKNOWLEDGEMENT

I hereby acknowledge receipt of the Mental Health Involuntary Medication Panel Response, notice of
right to appeal, and attached Appeal of Decision to Involuntarily Medicate.   No

Inmate Signature                                         Date

Original in chart
Copy for inmate

HR519 Rev 3/20/2013
CONNECTICUT DEPARTMENT OF CORRECTION
UNIVERSITY OF CONNECTICUT HEALTH CENTER
CORRECTIONAL MANAGED HEALTH CARE

MENTAL HEALTH INVOLUNTARY
MEDICATION PANEL DECISION

| NUMBER | 362958 | DOB | 3/2/84 |
|--------|--------|-----|--------|
| NAME | Santos, Jose | | |
| SEX | RACE/ETHNIC | FACILITY | |
| m | H | 9C | |

## TO BE COMPLETED BY PANEL CHAIRPERSON OR PANEL DESIGNEE

### PANEL MEMBERS
**CHAIR (Check one)**                                    Vote to Authorize Involuntary Medication

☑ Psychiatrist (name) _Ginny Gebling Rosen h.D_     ☐ YES    ☑ NO

☑ Panel Member (name, title) _Tod Bogdanoff_        ☑ YES    ☑ NO

☑ Panel Member (name, title) _Santore N_            ☐ YES    ☑ NO

## PANEL DISPOSITION

☐ INVOLUNTARY MEDICATION AUTHORIZED

☒ INVOLUNTARY MEDICATION NOT AUTHORIZED

RATIONALE FOR DISPOSITION I M Santos related his ideas re: having "sensor" or "camera" implanted and in support of this gave us a imaginative diagram of the normal human cell. He also mentioned "a lawsuit" against UCONN for implanting this. This may be a delusa. ne cognitive misunderstanding of certain information. But despite this, IM Santos presented well groomed, intact and clear that he "plays crazy" to help his potential motions and manipulates situations for advantage. He denied many things in his medical record that were documented. He denied producing psychotic Sx's and there was no evidence of gross disorganization of his thinking. The panel was impressed with his antisocial style and the medical record as inconclusive whether medication made a substantial positive difference in his presentation. There is a significant malingering component and evidence that he will cling to a behavior or ideal that he feels will benefit him. Because of this he does not meet the criteria for an involuntary medical panel a

Note: The rationale will specifically state whether or not mental illness or disorder is found and if so, how that illness or disorder this is related to danger to self, danger to others, damage to property affecting the security or orderly running of the institution, grave H me disability, or how in the absence of medication the inmate is likely to rapidly deteriorate into one of these above states.

_Ginny Gebling Rosen h.D_
PANEL PSYCHIATRIST SIGNATURE           DATE 10/29/13

_[signature]_
PANEL MEMBER SIGNATURE                 DATE 10/29/13

_[signature]_
PANEL MEMBER SIGNATURE                 DATE _[date]_

HRS12 Rev 3/2013
**CONNECTICUT DEPARTMENT OF CORRECTION**
**UNIVERSITY OF CONNECTICUT HEALTH CENTER**
**CORRECTIONAL MANAGED HEALTH CARE**

**MENTAL HEALTH INVOLUNTARY**
**MEDICATION PANEL REFERRAL**

| NUMBER 362958 | DOB 03/02/1984 |
|---|---|
| NAME Santos, Jose (Candelaria, Dejesus) | |

| SEX M | RACE/ETHNIC Hispanic | FACILITY |
|---|---|---|

## TO BE COMPLETED BY TREATING PSYCHIATRIST OR PSYCHIATRIC APRN

TREATING PSYCHIATRIST OR APRN (print name) Sohrab Zahedi, M.D.     DATE 10/21/13

DIAGNOSIS:
AXIS I ____ Schizophrenia

AXIS II  None

AXIS III  None

AXIS IV  LegalIssues

AXIS V  45

BEHAVIOR AND SYMPTOMS JUSTIFYING DIAGNOSIS Mr. Santos has been, and remains, delu-
sional and his behavior is infrequently disorganized--exposing himself, fighting with
peers without provocation. As with all paranoid patients, a correctional setting has been
beneficial for him as it mitigates his paranoia. However, we have unearthed previous
treatment discharge summaries that belly our belief that he needs treatment.

RATIONALE FOR THE NECESSITY OF MEDICATION Mr. Santos denies his psychiatric condition
and actively opposes all suggestions of treatment. While he has sustained periods of
calm and organized behavior--showers and attends to himself independently--his thou-
ghts have interfered with his correctional functioning: DRs for assualt, self exposure
and refusal of medical care for an injured wrist.

**AS A RESULT OF THE INMATE'S MENTAL DISORDER OR ILLNESS** (check as applicable):

☑ Inmate is gravely disabled.

☑ Inmate is a serious risk to harm self or others

☑ Inmate poses a serious threat of damage to property affecting the security or orderly running of the institution.

☐ Inmate will rapidly deteriorate to one of the above states without medication.

Signature of Treating Psychiatrist or APRN          Date

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

HR518 Rev 3/20/2013
CONNECTICUT DEPARTMENT OF CORRECTION
UNIVERSITY OF CONNECTICUT HEALTH CENTER
CORRECTIONAL MANAGED HEALTH CARE

POSTPONEMENT OF INVOLUNTARY
MEDICATION PANEL

| NUMBER | 362908 | DOB 13-2-84 |
|--------|--------|-------------|
| NAME | Santor, Jose | |
| SEX | RACE/ETHNIC | FACILITY |
| m | H | G CI |

TO BE COMPLETED BY THE PANEL CHAIRPERSON

To: CMHC Director of Mental Health and Psychiatric Services or designee

From: _Dr Gebino-Ruren_

Date: _10/23/13_

Subject: Request for Postponement of Involuntary Medication Panel

We are requesting a postponement of the Involuntary Medication Panel for the above inmate of up to but not exceeding seven (7) days for the following reasons:

_waiting for prior records to arrive from_
_Central Warehouse._

(x) _Remy Gebino Ruen MD_                          _10/23/13_
Signature of Panel Chairperson                          Date

POSTPONEMENT DECISION

☒ POSTPONEMENT APPROVED.

☐ POSTPONEMENT DENIED.

_appropriate indication for delay._

_Robert H Berger, MD_                          _10/23/13_
Signature of CMHC Director of Mental Health          Date
and Psychiatric Services or designee

Original in Chart
Copy for Warden
Copy for Inmate

HR513 Rev 3/20/2013
CONNECTICUT DEPARTMENT OF CORRECTION
UNIVERSITY OF CONNECTICUT HEALTH CENTER
CORRECTIONAL MANAGED HEALTH CARE

NOTIFICATION OF MENTAL HEALTH
INVOLUNTARY MEDICATION PANEL

| NUMBER | 362958 | DOB | 3-2-84 |
|---|---|---|---|
| NAME | Suntor, Jose | | |
| SEX | M | RACE/ETHNIC | H | FACILITY | GCI |

## TO BE COMPLETED BY THE INMATE ADVISOR

A Mental Health Involuntary Medication Panel will convene on ___10/24/13___ (date)
at ___10:45 AM___ (time) to decide whether you should receive involuntary medication.

The reason for this hearing is that your treating psychiatrist or APRN has determined that you
suffer from a mental illness or disorder and as a result:

☑ You are gravely disabled.
☑ There is a serious risk that you may harm yourself or someone else.
☑ You pose a serious threat to damage property that would affect the security or orderly running of the facility.
☐ Your condition will rapidly deteriorate to one or more of the forgoing states without such medication.

You have the right to be present at the hearing and to be heard, and to present evidence.
You have the right to the assistance of a competent advisor during the hearing process who is a member of the staff
with formal mental health training who understands the psychiatric issues involved and is not involved in your
current treatment.
You have the right to be informed of the evidence relied on for the proposed treatment unless such disclosure is
judged harmful to your health, in which case you will be informed that the evidence is being withheld on that basis
and the evidence will be disclosed to the inmate adviser.
You have the right to present testimony through your own witnesses and to cross examine witnesses called by the
facility.

Inmate Advisor ___Csw Bessette___

Facility Witnesses ___Dr. Zahedi___

The evidence relied upon by facility referring staff, including diagnosis, is set forth in the attached **MENTAL
HEALTH INVOLUNTARY MEDICATION PANEL REFERRAL (HR 512).** The panel will reach a decision
after the hearing. You will be given a copy of the panel's decision.

### Inmate Acknowledgment and Statement Regarding Witnesses

☐ I have received a copy of this notification and the attached **MENTAL HEALTH INVOLUNTARY
MEDICATION PANEL REFERRAL (HR 512).**

☐ I accept the appointment of the Inmate Advisor.

☐ I refuse the appointment of the Inmate Advisor.

I wish to call the following witnesses at the hearing:

\* Inmate Refused to
Sign 10/22/13 145pm
(KBessette, Lcsw)

_____

_____

_____

**Inmate Signature** _____          **Date** _____

WAMA111                          CT DOC — PRODUCTION                          OTRTASTA
                     T R U S T   A C C O U N T   S T A T E M E N T            10.2.1.3

DOC#:   0000362958    Name: SANTOS, JOSE              [Birth_Date]: 03/02/1984
LOCATION: 121-E

ACCOUNT BALANCES Total:      0.00        CURRENT:      0.00        HOLD:      0.00

                            08/16/2013   10/16/2013

| SUB ACCOUNT | START BALANCE | END BALANCE |
| --- | --- | --- |
| SPENDABLE BALANCE | 0.00 | 0.00 |
| DISCHARGED SAVINGS | | |
| PLRA | | |
| HOLIDAY PACKAGES | | |
| BONDS | | |
| COST OF INCARCERATION | | |
| REENTRY ID | | |

DEBTS AND OBLIGATIONS

| TYPE | PAYABLE | INFO NUMBER | AMOUNT OWING | AMOUNT PAID | WRITE OFF AMT. |
| --- | --- | --- | --- | --- | --- |
| OSIC | MED SIC OBLIGATION | 141-11/04/10 | 3.00 | 0.00 | 0.00 |
| ORES | RESTITUTION | 141-01/20/12 | 25.00 | 0.00 | 0.00 |
| ODEN | MED DEN OBLIGATION | 141-12/03/12 | 6.00 | 0.00 | 0.00 |

        TRANSACTION DESCRIPTIONS --        SPENDABLE BALANCE SUB-ACCOUNT

| DATE | TYPE | TRANSACTION DESCRIPTION | TRANSACTION AMT | BALANCE |
| --- | --- | --- | --- | --- |

        TRANSACTION DESCRIPTIONS --        DISCHARGED SUB-ACCOUNT
                                                SAVINGS

| DATE | TYPE | TRANSACTION DESCRIPTION | TRANSACTION AMT | BALANCE |
| --- | --- | --- | --- | --- |

        TRANSACTION DESCRIPTIONS --              PLRA SUB-ACCOUNT

| DATE | TYPE | TRANSACTION DESCRIPTION | TRANSACTION AMT | BALANCE |
| --- | --- | --- | --- | --- |

        TRANSACTION DESCRIPTIONS --        HOLIDAY PACKAGES SUB-ACCOUNT

| DATE | TYPE | TRANSACTION DESCRIPTION | TRANSACTION AMT | BALANCE |
| --- | --- | --- | --- | --- |

        TRANSACTION DESCRIPTIONS --              BONDS SUB-ACCOUNT

| DATE | TYPE | TRANSACTION DESCRIPTION | TRANSACTION AMT | BALANCE |
| --- | --- | --- | --- | --- |

        TRANSACTION DESCRIPTIONS --        COST OF  SUB ACCOUNT
                                            INCARCERATION

| DATE | TYPE | TRANSACTION DESCRIPTION | TRANSACTION AMT | BALANCE |
| --- | --- | --- | --- | --- |

        TRANSACTION DESCRIPTIONS --        REENTRY ID SUB-ACCOUNT

| DATE | TYPE | TRANSACTION DESCRIPTION | TRANSACTION AMT | BALANCE |
| --- | --- | --- | --- | --- |







# Medical Incident Report
## Connecticut Department of Correction

CN 6602
REV 6/30/09

| Facility/Unit: Northern Correctional Institution | Report date: 01/09/2011 | Time: 8:00 | ☐ am ☑ pm |
|---|---|---|---|

| Name of patient: Cadelaria, Jose | Inmate number (if applicable): 362958 |
|---|---|

Medical staff name:  Jill Haga, LPC

| Incident report submitted: ☐ yes ☐ no | Report number: | Date: |
|---|---|---|

Treatment location: 3 East Medical Screening

**Injury description:**       *No hable Yo Los que cS Tatayado =*
Inmate has not eaten for four days reporting he is hearing voices of Jesus, a demon, and a chip in his stomach telling him not to eat. Inmate denies self ideation, no cutting observed.

**Assessment:**
Inmate appears to have lost weight secondary to not eating.  I/M reporting A/H.  Speech and thoughts appear disorganized.

**Treatment administered:**
Inmate admitted to the infirmary for mental health observation with full privileges to monitor eating habits and psychotic symptoms per Dr. Mitra.  Inmate may have regular jumpsuit, mattress, blanket and Bible with regular meals.

**Required follow-up:**
Follow up per mental health protocol.

**Observations/remarks:**

**Chemical agent review prior to planned use of force:**
The offender's health record was reviewed prior to planned use of force. There were no contraindications noted regarding or precluding the use of chemical agents (i.e. history of cardiac or respiratory condition, eye condition under active treatment, or documented prior severe and unexpected reaction to chemical agents).
Known contraindications based on review of health record?     ☐ yes   ☐ no

Placement after treatment:
☐ Inmate is cleared for General Population Placement       ☐ Inmate is cleared for Restrictive Housing Placement
☐ Inmate is not cleared for Restrictive Housing Placement   ☐ Other (specify):

| Patient signature: | Date: |
|---|---|
| Medical staff signature:  _Jill Haga_, LPC | Date: 01/09/2011 |
| Custody supervisor signature: | Date: |

HR401 REV.09/02
CONNECTICUT DEPARTMENT OF CORRECTION
UNIVERSITY OF CONNECTICUT HEALTH CENTER
CORRECTIONAL MANAGED HEALTH CARE

**CLINICAL RECORD**

| INMATE NUMBER | 362958 | DATE OF BIRTH | 3/2/84 |
|---|---|---|---|
| INMATE NAME (LAST, FIRST, INITIAL) | Candelara Jose | | |
| SEX Ⓜ F | RACE/ETHNIC B W Ⓗ O | FACILITY | NCI |

| DATE / TIME | Cont |
|---|---|
| 1/15/11 MH 6:30pm | in his food. I/m reported that the food caused him to vomit, which shows that some one is trying to hurt him and poison his food. I/m also reported that his last cellmate did "witchcraft on me", which makes him believe that others are trying to hurt him - I/m has refused his medication and wouldn't accept any medications for stomach due to fear of being poisoned. I/m reported that he will not take medication." A:? Paranoia seemed more evident per conversation. P. HO per MH protocol ⟨signature⟩ |
| 1-15-11 3pm-11pm | S/O Communication thru interpreter c/o eccheverria. IM belief of food being poisoned. c/o upset stomach. Observed by custody eating small portion of meal, and Kneeling by toilet. IM reported nausea. Religious hallucinations (auditory) hearing voices of God and the Devil. A/P alt. mental status. Cont (POC) ⟨signature⟩ RN |
| 1-16-11 0615h | S/I IL observed sleeping on floor by shower area. Quiet all night. N/P Cont ε POC ⟨signature⟩ |
| 1/16/11 MH 1:40pm | S: MH OBS ε PRIVILEGES O- I/m seen @ cell DOOR - I/m SOCIALIZING ε I/m IN cell NEXT DOOR - I/m SMILING, RELAXED. PER MEDICAL, I/m IS BEGINNING TO ACCEPT FOOD. A: BRIGHT AFFECT, SOCIAL. APPEARS STABLE. P: FLU PER MH PROTOCOL JILL HAGABER |
| 1/16/11 med 2:00 | S/O I I/m seen at cell DOOR talking in spanish to I/m in cell #2 conversing all Day. took ε Breakfast ↓ Lunch. Ø issue at this time A: trouble at this time P: cont. to monitor ⟨signature⟩ |
| | |
| | |
| | |



## Medical Incident Report
### Connecticut Department of Correction

CN 6602
REV 6/30/09

| Facility/Unit: Northern CI | Report date: 01/18/11 | Time: 10:00 ☑ am ☐ pm |
|---|---|---|

| Name of patient: Cadeleria, Jose | *74167* | Inmate number (if applicable): 362988 |
|---|---|---|

Medical staff name: Mark Frayne, PsyD

| Incident report submitted: ☐ yes ☐ no | Report number: | Date: |
|---|---|---|

Treatment location: Infirmary Cell #3

Injury description:

None. The inmate moves in and out refusing food, pointing out to staff that his food is poisoned and/or tampered with.

Assessment:

Looking deeper in his records (consultation with Garner staff, and how the inmate generates detailed psychotic symptoms, strongly suggests that he is simply avoiding housing. Although he made it to Phase 2, the inmate suddenly stopped his progression, and began generating symptoms.

Treatment administered:

Verbal intervention with Dr. Gagne.

Required follow-up:

Mental Health 3 protocols.

Observations/remarks:

The inmate is now detailing symptoms, and requesting his food be served a specific way, in order for him to feel better, it is unlikely the inmate is actually psychotic at this time, with how he needs to detail symptoms. Instead, he appears anxious to return to AS housing - whereas we did not see this from him before.

**Chemical agent review prior to planned use of force:**
The offender's health record was reviewed prior to planned use of force. There were no contraindications noted regarding or precluding the use of chemical agents (i.e. history of cardiac or respiratory condition, eye condition under active treatment, or documented prior severe and unexpected reaction to chemical agents).
Known contraindications based on review of health record?   ☐ yes ☐ no

Placement after treatment:

☑ Inmate is cleared for General Population Placement     ☐ Inmate is cleared for Restrictive Housing Placement

☐ Inmate is not cleared for Restrictive Housing Placement     ☐ Other (specify):

| Patient signature: Unable | Date: |
|---|---|
| Medical staff signature: Mark Frayne, PsyD | Date: 01/18/11 |
| Custody supervisor signature: | Date: |





# Medical Incident Report
## Connecticut Department of Correction

CN 6602
REV 6/30/09

| Facility/Unit: Northern CI | Report date: 11/03/12 | Time: 7:50 ☑ am ☐ pm |
|---|---|---|

| Name of patient: Santos | Inmate number (if applicable): 362958 |
|---|---|

Medical staff name: Shannon Lawrence RN

| Incident report submitted: ☐ yes ☐ no | Report number: | Date: |
|---|---|---|

Treatment location: 1 West 102

**Injury description:**
No injury noted

**Assessment:**
In-cell restraint check

**Treatment administered:**
Visual, verbal, tactile assessment. Cell entered with custody supervisor.

**Required follow-up:**
Per A.D. 6.5 and prn

**Observations/remarks:**
Alert, oriented x's 3. Ample spacing noted between extremities and restraints, +CMS, good ROM. Skin intact, no medical complaints voiced.

**Chemical agent review prior to planned use of force:**
The offender's health record was reviewed prior to planned use of force. There were no contraindications noted regarding or precluding the use of chemical agents (i.e. history of cardiac or respiratory condition, eye condition under active treatment, or documented prior severe and unexpected reaction to chemical agents).
Known contraindications based on review of health record?      ☐ yes   ☑ no

**Placement after treatment:**

☐ Inmate is cleared for General Population Placement          ☐ Inmate is cleared for Restrictive Housing Placement

☐ Inmate is not cleared for Restrictive Housing Placement     ☑ Other (specify):

| Patient signature: inappropriate to give a pen | Date: 11/03/12 |
|---|---|
| Medical staff signature: Shannon Lawrence RN *(signature)* | Date: 11/03/12 |
| Custody supervisor signature: | Date: |



# Medical Incident Report
## Connecticut Department of Correction

CN 6602
REV 6/30/09

| Facility/Unit: NCI | Report date: 10/4/2010 | Time: 7:45 | ☐ am | ☑ pm |
|---|---|---|---|---|

| Name of patient: Cadeleria | Inmate number (if applicable): 362958 |
|---|---|

Medical staff name: NURSE NIGEL

| Incident report submitted: ☐ yes ☐ no | Report number: | Date: |
|---|---|---|

Treatment location: 3E MEDICAL SCREENING TO 3W 103

Injury description:
NONE NOTED, I/M NOTED COVERING WINDOW, CHEMICAL AGENT USED TO GAIN INMATES COMPLIANCE.

Assessment:
IN CELL RESTRAINT PLACEMENT

Treatment administered:
DECONTAMINATION SHOWER BY CUSTODY, EYES FLUSHED BY MEDICAL, VISUAL VERBAL TACTILE

Required follow-up:
Q12 AND PRN

Observations/remarks:
A&OX3, GAIT STEADY SKIN INTACT NO INJURY NOTED AMPLE SPACING NOTED TIMES FOUR, NO COMPLAINTS OF PAIN OR DISCOMFORT AT THIS TIME NO COMPLAINTS GIVEN TO MEDICAL, +ROM, +CMS

**Chemical agent review prior to planned use of force:**
The offender's health record was reviewed prior to planned use of force. There were no contraindications noted regarding or precluding the use of chemical agents (i.e. history of cardiac or respiratory condition, eye condition under active treatment, or documented prior severe and unexpected reaction to chemical agents).

Known contraindications based on review of health record?   ☐ yes   ☑ no

Placement after treatment:

☐ Inmate is cleared for General Population Placement        ☐ Inmate is cleared for Restrictive Housing Placement

☐ Inmate is not cleared for Restrictive Housing Placement   ☑ Other (specify):

| Patient signature: INAPPROPRIATE FOR PEN AT THIS TIME | Date: |
|---|---|
| Medical staff signature: NURSE NIGEL | Date: 10/4/2010 |
| Custody supervisor signature: | Date: |



# Medical Incident Report
## Connecticut Department of Correction

CN 6602
REV 6/30/09

| Facility/Unit: NCI | Report date: 1/20/12 | Time: 7:37 ☑ am ☐ pm |
|---|---|---|

| Name of patient: SANTOS | Inmate number (if applicable): 362958 |
|---|---|

Medical staff name: B SAVOIE RN

| Incident report submitted: ☐ yes ☐ no | Report number: | Date: |
|---|---|---|

Treatment location: 1 WEST 102

**Injury description:**
IN CELL RESTRAINT CHECK UPGRADED TO MODIFIED RESTRAINTS

**Assessment:**
IN CELL RESTRAINT CHECK UPGRADED TO MODIFIED RESTRAINTS

**Treatment administered:**
ASSESMENT TACTILE AND VISUAL

**Required follow-up:**
PER AD 6.5

**Observations/remarks:**
A+Ox3 WRIST AND ANKLE WITH AMPLE SPACING , +CMS, SKIN WARM AND DRY ,SLIGHT REDNESS , SLIGHT
SWELLING, NO COMPLAINTS VOICED, NO OTHER TRAUMA NOTED

**Chemical agent review prior to planned use of force:**
The offender's health record was reviewed prior to planned use of force. There were no contraindications noted regarding or
precluding the use of chemical agents (i.e. history of cardiac or respiratory condition, eye condition under active treatment, or
documented prior severe and unexpected reaction to chemical agents).

Known contraindications based on review of health record?    ☐ yes  ☑ no

**Placement after treatment:**
☐ Inmate is cleared for General Population Placement          ☑ Inmate is cleared for Restrictive Housing Placement
☐ Inmate is not cleared for Restrictive Housing Placement     ☐ Other (specify):

| Patient signature: INAPPROIATE TO GIVE PEN | Date: 1/20/12 |
|---|---|

| Medical staff signature: B SAVOIE RN | Date: 1/20/12 |
|---|---|

| Custody supervisor signature: | Date: |
|---|---|



# Medical Incident Report
## Connecticut Department of Correction

CN 6602
REV 6/30/09

| Facility/Unit: NCI | Report date: 11/4/12 | Time: 3:50 | ☐ am | ☑ pm |
|---|---|---|---|---|

| Name of patient: SANTOS | Inmate number (if applicable): 362958 |
|---|---|

Medical staff name: CASEY ST. JOHN LPN

| Incident report submitted: ☐ yes ☐ no | Report number: | Date: |
|---|---|---|

Treatment location: 1 WEST CELL 102

**Injury description:**
NO NEW INJURIES NOTED.
IN-CELL RESTRAINT REMOVAL.

**Assessment:**
VISUAL, VERBAL, TACTILE ASSESSMENT. CELL ENTERED WITH CUSTODY SUPERVISOR.

**Treatment administered:**
IN-CELL RESTRAINT REMOVAL.

**Required follow-up:**
PER A.D 6.5 AND PRN.

**Observations/remarks:**
I/M A&OX3. ALL EXTREMITIES ASSESSED. SKIN INTACT WHERE RESTRAINTS WERE LOCATED. FADED BRUISING
TO RIGHT WRIST I/M TOLD TO SEEK OUT S/C IF IT EVENTUALLY CAUSES DISCOMFORT. +CMS, +PP. NO MEDICAL
COMPLAINTS VOICED OR NOTED.

**Chemical agent review prior to planned use of force:**
The offender's health record was reviewed prior to planned use of force. There were no contraindications noted regarding or
precluding the use of chemical agents (i.e. history of cardiac or respiratory condition, eye condition under active treatment, or
documented prior severe and unexpected reaction to chemical agents).
Known contraindications based on review of health record?   ☐ yes   ☑ no

**Placement after treatment:**

☐ Inmate is cleared for General Population Placement        ☐ Inmate is cleared for Restrictive Housing Placement

☐ Inmate is not cleared for Restrictive Housing Placement    ☑ Other (specify):

| Patient signature: INAPPROPRIATE TO GIVE A PEN | Date: 11/4/12 |
|---|---|
| Medical staff signature: CASEY ST. JOHN LPN/ | Date: 11/4/12 |
| Custody supervisor signature: | Date: |

# Medical Incident Report
## Connecticut Department of Correction

CN 6602
REV 6/30/09

| Facility/Unit: NCI | Report date:1/19/12 | Time:11:27 | ☐ am | ☒ pm |
|---|---|---|---|---|

Name of patient:SANTOS | Inmate number (if applicable):362958

Medical staff name: Anna Lisa Facey lpn

Incident report submitted: ☐ yes ☐ no | Report number: | Date:

Treatment location:3W 102

Injury description:NONE

Assessment: In –cell restraint placement

Treatment administered: visual/ verbal/tactile

Required follow-up:AS PER  AD6.5

Observations/remarks: A+OX 3 . ample spacing noted to all 4 extremities + cms to all 4 extremities  skin intact no medical complaints voiced

**Chemical agent review prior to planned use of force:**
The offender's health record was reviewed prior to planned use of force. There were no contraindications noted regarding or precluding the use of chemical agents (i.e. history of cardiac or respiratory condition, eye condition under active treatment, or documented prior severe and unexpected reaction to chemical agents).
Known contraindications based on review of health record?   ☐ yes  ☒ no

Placement after treatment:
☐ Inmate is cleared for General Population Placement   ☐ Inmate is cleared for Restrictive Housing Placement
☐ Inmate is not cleared for Restrictive Housing Placement   ☒ Other (specify):in cell restraints placement

Patient signature:  inappropriate to give pen | Date:  1/19/12

Medical staff signature: | Date:

Custody supervisor signature: | Date:

8-10-13

Your Honor,

I am writing this letter on behalf of Jose Santos Case # 1300621987. I have just read his police report and I have to say at first glance I had Mr. Santos convicted and hung from the highest tree. And then I read it again and I realized that it was a nice piece of fiction and for a moment I forgot that the average police officer aspires to be the next Dean Kootz. But your Honor you went to Law school and it was at great cost that you got your degree. It took a lot of personal sacrifice and it wasn't cheap. So I respect where you are and how you got there. But for someone to write this piece of fiction and try to pass it off as the truth one wonders if this is the "Knowledge gained from brother troopers acting in their official capacity".? It is a total insult to Law, Law enforcement and every other Law Abiding Citizen in the State of Conn and the United States of America. Sir I'm not going to take up much of your time, by giving you all of the falsehoods represented in this Fictional Police Report, I'm just going to give you the most blatant lie of all. On line 6 of this great work of fiction states that Mr. Santos refused to answer DOC staff when asked if he wanted to talk to state police, there appears to be one big problem. Mr. Santo's was released from prison 12/24/12 making it impossible for anyone in DOC to ask him

that question. Attached is a copy of his release papers
from D.Oc and Attached is a copy of his arrest on this
case months later after his release. I know dates can be
mixed up, but your not going to mix up 2-1-13, with
12-24-12, this is two diffrent years, and months apart.
The state trooper had no knowledge Mr. Santos had been released
So he told a blatant out right lie. Another fact is because
there is no video evidence, the whole incident happened
against D.O.C. protocol. Why because they beat Mr. Santos
up really bad, maced him in his private parts, and video
evidence would have sustained this claim. Because an
incident happened of this magnitude, with no video
evidence, a DOC investigation as well as a state police
investigation should have taken place, because of the
absence of video evidence. Your Honor, Mr. Santos isn't a
Saint, but his rights were violated and then covered up
and he was lied on in the cover up by the State Police.
Your Honor, I alluded to the fact that I respect your position
and intellect. Sometimes we have to go with our conscience
and do whats right. We know why theres no video evidence
and we know that the state trooper, didn't mis state the
facts, he blatantly lied. Your Honor, someone has to protect
the Constitution of the United States and the Rights of it's
Citizens, the ones we like and the ones we don't like. Sir
do the right thing and dismiss this case.
Thank you.

In SYSTEMS operating with a Two-Tiered Criminal Court System, roughly divided by misdemeanor and felony jurisdiction, about 90 To 95 Percent of all cases are handled in These lower CourTs; Different levels of court have distinct pathologies. The seriousness of The offense (and) consequently The possible severity of outcome) affects The ways court officials approach Their work. When a suspect is likely To be sent To jail for several years, his case is handled with far greater care Than is a case likely to result in a small fine by reference To seriousness of charges. generalizations about how criminal court, what is routine for one Type of case may not be for another. In This Study, my _observations_ focus primarily on The _lower_ _Court_ in New Haven, Connecticut The court of common. Most Students of The criminal Process agree That The operations of The criminal court are shaped by little-understood factors, and That decisions are made as a consequence of an uncharted, complex, and interdependent set of relationships. How is The criminal sanction administered. because The law is overdetermined, allowing conduct To be defined variously adjudication and sentenc- 3. To incidetal actions. Courts are parochial institutions comparative and quantitative Studies of criminal court The court in New Haven as are court elsewhere is like a closed community and iT Took me some considerable Time before I could penetrate iT I had To gain The confidence of its members, learn Their language and become a familiar face To Them A brief excursion into The courthouse simply would not have sufficed.

To Assit. Clerk Safia Syed,
I recently sent a letter to you to forward copies to
the Judge, Prosecutor and public defender in my case
and I sent a brief note stating this fact. I am well
aware I can't send a letter to the Judge exparte
which is why I requested it go to all parties in
my case, I am resubmitting it to you, again, 3(copies
one to the Judge, one to the prosecutor and one to
my Public Defender in the Case and to insure that
they recieve it as requested I am send a copy
to the Conn. Attorney Generals office.
Thank you very much.



I marshal evidence on This point with respect To rates of
crime and arrests in chapter Three and for an extended Treatment
of This concern I refer The skeptical reader To The introducto
chapters of Robert Dahl's Who Governs and Raymond
Wolfinger's The Politics of Progress both of which
argue That New Haven is not particularly distinctive I
emphasize not ~~XXXXXXXXXXXXXXXXXXXXXXXXXXXX~~
~~XXXXXXXXXXXXXXXXXXXXXXXXXXXX~~
~~XXXXXXXXXXXXXXXXXXXXXXXX~~ because in The final
analysis all cities and locations are distinctive As
Raymond wolfinger,s observed. ~~Santos~~ at other connection
cities, one notes That Bridgeport has a socialist party
whose durable leader was Mayo for ~~~~ years, Hartford
has an economy in which The insurance industry plays an
unusually important part, and so on. A Truly Typical America
city cannot be found and The best one can hope for is
a research site That is Typical of its Type New Haven meets
This criterion, it is not a municipal freak. Their facilities
are Terrible courtrooms are crowded, chambers are dingy
and libraries are virtually nonexistent, The depressing air
about The courtrooms carries over To The mood of
The people who populate Them. By conventional standard
nearly all of The defendants are failures, both in life and in
crime. They are poor, often unemployed, usually young, and
frequently from broken homo. Most of Them lack self-esteem
motivation, skill, and opportunity. A great Many of Them have
come To rely on alcohol and drugs, and Problems related To Their
use often bring These People into court. Breach of Peace and

To Assit. Clerk Safia Syed,          08/27/2013
I recently sent a letter to you to forward copies
to the judge, prosecutor and public defender in my
case and I sent a brief note stating this fact.
I am well aware I can't send a letter to the
judge ex-parte which is why I requested it to
go to all parties in my case, I am resubmitting
it to you, again, 3 copies, one to the judge, one to
the prosecutor and one to my public defender in
my case and to insure that they recieve it as
requested, I am sending a copy to the Com.
Attorney Generals office. Thank you very
much.

                                    At J. Santos.



I Marshal evidence on This point with respect To rates of
Crime and arrests in chapter Three and for an extended Treatment
of This concern I refer The skeptical reader To The introducto
Chapters of Robert Danis who Governs and Raymond
Wolfinger's The Politics of Progress both of which
argue That New Haven is not particularly distinctive I
emphasize not ~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~
~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~
~~XXXXXXXXXXXXXXX~~ because in The final
analysis all cities and locations are distinctive as
Raymond walfinger's observed. ~~Santos~~ at other connection
cities, one notes That Bridgeport has a socialist party
whose durable leader was Mayo for years Hartford
has an economy in which The insurance industry plays an
unusually important part, and So on. A Truly Typical American
city cannot be found and The best one can hope for is
a research Site That is Typical of its Type New Haven meets
This criterion, it is not a municipal freak. Their facilities
are Terrible Courtrooms are crowded, chambers are dingy
and libraries are virtually nonexistent, The depressing air
about The Courtrooms carries over To The mood of
The people who Populate Them. By conventional standard
nearly all of The defendants are failures, both in life and in
crime. They are Poor, often unemployed, usually young, and
frequently from broken home. Most of Them lack self-esteem,
motivation, skill, and opportunity. A great many of Them have
come To rely on alcohol and drugs, and Problems related To Their
use often bring These People into court Breach of Peace and

disorderly conduct are the most common charges handled by the lower co They often stem from actions fueled by alcohol for many of the defendants pett is a way of life that they pay for with an occasional appearance in court. Defendants in the courts, particularly those in urban areas, are disproportionately Black, while court officials are predominantly white. This contrast serves to reinforce both the defendants' and the officials belief in two separate worlds divided by a chasm of wealth status and power In this way these courts serve as a catalyst for themselves. Prosecutors dulled by their repetitive work may be noncommunicat and appear to be vindictive. Cases in lower courts are universally labeled as "garbage" "junk," "trash" "crap" (Penny) ante and the like these words not only describe the way in which court officials come to think of their work they also reveal how they think of the defendants before them and ultimately themselves as well in systems with a two-tiered trial court system about 80 to 90 percent of all criminal prosecutions begin and end in the lower courts next to contact with the police. Contact with these courts, is the mos important way in which citizens form impressions of the American system of criminal justice. Even excluding traffic offenses, each year several millions of people are drawn into direct contact with these courts. as defendants, complainants, witnesses or jurors, or as friends, or relations, of someone, else in one of these roles, Now this may well be asked. What credentials does the author of this letter have to take on questions of criminal justice? with a state supreme court. It goes without saying. That I am not an expert, on jurisprudence, and I have presumed to write, such a letter, as this only because, of my novelist, sense of what, happens, to all the human beings, judges, with its atmosphere, of pragmatism, getting the job done in the crudest, but quickest way within the end its cynicism its assumption that riffraff are probably guilty, its lesson to the accused poor, that justice is a matter of wheeling and dealing of influence, i can get you a suspended, sentence, if you'll cop the plea") and so of coppin out (playing the game, fitting in with the system's requirement. that the job of the court be done above all with dispatch. the noble ideal (innocent until proven guilty gives way to a corrupt and crime feeding one let off easy if copped as guilty when will we turn our eyes to what goes on in the pit Although all defendant. have a right to a trial by jury not one defendant, in a sample of?, by a case. insisted upon one (Even in those cases, in which (counsel) was present his contribution) was questionable" "Interviews" with clients were often. little more than quick whispered exchanges in the corridor, and preceding before the bench consisted of little more than a defense attorney recapitulation of what his client told him there was little independent investigation of facts arrestees) were at the mercy of police who set bail according to a schedule based on the seriousness of the charges. Although, most (arrestees were eventually released, prior. to trial 10 percent of them were detained, until disposition. while this figure, may seem, insignificant, it's twice as many people were sent to jail prior to trial than after trial,

Churchs/Triel style Arrestees, were arraigned in groups and informed, of their rights, en masse. At times. The arrestees. Judges did not always look at them and eve if a judge, made an effort. To be heard he could not always be understood over the content. din of the courtroom. Although the Sixth Amendment. To the Constitution, guarantees, the right to a speedy, trial seemingly, simple cases. dragged, out endlessly, cases, in which there, was no trial no witnesses, no formal motion, no pretrial, involvement, from the bench and no presenten investigation still required as many as eight, or the different, appearances, spread over six months. Conversely many complex cases were cut short because. The accused had agreed to plead guilty at arraignment, after the prosecutor advised him to "be smart and get it over with today." those with prior. records, did not fare significantly worse than first offenders sentences could not be accounted, for by standard "legal" factors, seriousness of charge, or prior, record. There, is no dearth of explanation, to account, for this continuing "crisis" in the courts. Some, argue, that "press of heavy, caseloads, prohibits, slow deliberation" others, argue that we are witnessing the twilight of the adversary system, and the ascendency, of a criminal, justice, bureaucracy. which operates in assembly-line fashion. Some point to the pervasiveness, of plea bargaining claiming that uncaring defense attorneys, ruthless prosecutors (and indifferent judges) encou rage pleas of guilty in orde to avoid the difficult, and time-consuming. tasks of mounting a defense, proving guilt and umpiring a contest. The plea bargain. Model plea bargaining allows the prosecution, and the defense to share in both gains and losses. By pleading guilty, the defense, gains, certainly, of outcom and a reduction, of the sentence he otherwise, would, have received had he been, convicted, after trial. The prosecutor, gains by securing, a conviction, without the effort, of putting, on a trial. The state is also a beneficiary, because, it secures, an admission, of guilt. Punishes. the guilty. and yet saves the expens of a trial. Although not always explicitly, acknowledged. There, is another type of concern, which supports, the guilty, plea process. By pleading guilty, the defendant, is not only likely to gain a reduction, of the sentence. he also redunse the decision-making costs, associated with mounting a defense. For those with, private attorneys, this may mean a smaller f For all defendants with publicly appointed or private attorneys – it elimen tes, the embarrassment of a public, trial, a spectacle that to the defendant and his family In addition. The guilty plea process also saves the generally accepted, reason for plea bargaining is a need for the rapid. processing of large numbers of case which clog. the court. Despite, their differences of position, prosecutors, defense, attorneys, and judge are said to have a common, administrative, interest in the rapid, processing of cases, which - plea bargaining facilitates. For this reason plea bargaining is often,

Criticized, by those, who view the criminal process, from the defendant's perspective, they complain, that it is a process, which sacrifice concern, for truth and accuracy, for expediency. Even if plea, bargaining does indus an occasional innocent, person to guilty, most observers agree that the practic survives, because, it offers discounted, sentences, to the great majority, of defendants who could have been. Proven, guilty in the plea bargain, made the explanation, for the truncated, process, is the discounted, sentence, an offer necessitated by the administrative concerns, of an overworked system. And while trial rates remain low and may even have decreased in recent years it is not at all clea to what extent other adversarial techniques remain. Trials are expensive and time-consuming, and are usually not either a real alternative to a plea of guilty or a real threat in a under 30. Blacks constitute 58 percent of all defendants and Hispanics 8 percent the respective proportions in the New Haven population for these groups are 25 percent and 4 percent. Given the eth nic composition of New Haven, there is a pronounced "overrepresentation" of Blacks, and Puerto Ricans, and an equally pronounced, "underre presentation" of whites in the lower court. The imbalance is even more pro nounced for sex. Males constitute only 47.5 percent of the population New Haven but they account for fully 80 percent of the defendants have prior New Haven arrest records, a figure that understates the real number of defendants, who have had prior encounters with criminal courts because it does not include juvenile arrest record or all record from other jurisdic tions. By tradition police officers are not required to be present at the arraignments of those whom they have arrested, and they are rarely called as witnesses. Most of the prosecutor-police communication, is by telephone, when a occasionally, the police officer, may approach, the prosecutor, to ask, for a lower, bond and lenient treatment, because, the accused, is an informant, whom, the police are "son to after" or an office may occasionally, request, the prosecutor, to "go easy" on a defendant because, he is an acquaintance, although occasionally will complain, about, poor so that, means, you can be charge, with a crime or arrest, don't, always mean, nod will be convicted, of the charge that nice 2 No police practices-their, carelessness, in making, an arrest collecting and preserving, evidence or writing, up a report- the prosecutor's office, has not made any concerted, ef ort, to reduce, these problems, and in fact, does not view them as very serious, the primary, reason is that in New Haven many arrests for felonies are made by warrants, issued, by the superior, court, which require, arrestees, to be taken directly to that court, by passing the arraignment, in common pleas court. It is not surprising,

X X X XXXXXXXXXXXX XXXX XX XX X X X X X X X X

To find ... prosecutors and defense attorneys alike—who regularly work in The Court of Common Pleas are extremely (critical) of it while older attorneys view it with more tolerance. This division of opinion reflects differences in perspective and experience. The older attorneys recall what the court system "used to be like" and although some are wistful for earlier days, most are thankful for the progress they have seen the court make. The younger attorneys closer to their law school idealism and less familiar with the practices of the past. Compare the casual processes and crowded facilities of common Pleas to the more deliberate processes and ample facilities of Superior court. This difference according to one old attorney, "Cases were nolled, dismissed, or buried for strange reasons and no one would question. The politically active court. Personnel were willing. To do favors for their brother Democrats or Republicans. The 1950s court reform was of growing concern to citizen groups, and an expanding state bar association. It was elevated to a major issue in **Abraham** Ribicoff's, successful gubernatorial campaign in 1958, which resulted in the court Reform Act of 1959. Act rationalized the state's crazy quilt system of lower courts with overlapping jurisdiction and replace it with a single statewide system divided into eighteen circuits whose jurisdiction was limited to "five-year felonies" and the imposition of sentences no greater than sentences eliminated, the trial de novo, provided for a full-time judiciary. It was, largely, for these reasons that a faction-ridden legislature, could pass a seemingly sweeping court Reform Act establishing a circuit court, system, which allowed a Democratic governor, Abraham, Ribicoff a windfall, of several, dozen judicial nominations. Prosecutors and public defenders are usually younger than judges because there is considerably less prestige attached to these jobs and the salaries are lower. Appositions are made less because of the services of one's father, mother, or other close relative or friend. Many of the prosecutors and public defenders in the court of common Pleas have family members or other close relatives who were active in local political organizations. Meskill (The Republican governor from 1970, To 1974) Democrats" and "Dempsey (The Democratic"

Case 3:14-cv-00877-SRU Document 1 Filed 06/13/14 Page 60 of 64

A Republican for instance, ascend to the position of Chief resident — from the [...] (19.16) "Republicans" A Republican Judge in a predominatly Democratic city and not be wholly bound to the dominant party's interests. [...] New Haven is a lawyers Town. Almost 700 practicing attorneys are listed in the telephone directory, far more per capita than in Bridgeport, but substantially fewer than in Hartford. There are several reasons for this. New Haven is the commercial center for central Connecticut, if not the entire state and many businesses have offices there. It is also the central city for a much larger metropolitan area and it is the home of Yale University and its law school, draw attorneys to New Haven, attracting a disproportionate number of local students who remain in the area after graduation and others who put down roots in the city during their school years. The prosecutor holds out the arresting officer's report so that both he and the defense attorney can read for the first time the defendant is charged with receiving stolen goods and larceny that the prosecutor argues that the case is cut and dried, but the defense attorney counters by claiming that the report is filled with ambiguities and that there are serious questions about the strength of the evidence. This he suggests, is cause for leniency. The prosecutor refuses to acknowledge this line of reasoning, saying "The defendant knew that they were stolen; two tv sets, stereos, and all that other stuff for fifty dollars! The defense attorney protests. Yea, but a black-and white tv may not be worth very much" The prosecutor shrugs off this line of reasoning, but a does concede, "I'll give the guy a suspended sentence because the goods were recovered — I'll give you a suspended on the larceny and nolle the other charge" The defense attorney pleads "My clint has no record, and he's only nineteen years old. Give me a break." There is no clear line which distinguishes sentencing from adjudication in deciding whether to seek a jail term, ask for a fine, recommend a suspended sentence, press for a plea of guilty, or grant a nolle, the prosecutor goes through essentially the same process. He attempts to establish the "worth" of the case which in turn dictates how he will treat it. For instance, part-time prosecutors are not as adept at determining worth as public defenders quickly become adept at it but many private attorneys who appear in court only occasionally, neve do you have to know the witnesses and the potential are going to react, the priority of the Prosecutor's office and the prior histor the bibian of the defendant and the problems of introducing evidence, how your witnesses will appear on the stand. The priority of the complainants themselves is important—we are, for instance, reluctant to get involved in an intrafamily fight and don't want to give mothers-is- law a new forum for harassing their daughters-in-law. Some prosecutors simply don't have common-

8) Sense, and so... Briggs, Judges, some... of T and others, are Pricks, who want To Prosecute everything, with experience, however you learn and begin Talking, all these, factors, into consideration, in coming up with a solution, To The Case. I Think. The legal Probably come into Play in about one in every Twenty-five cases, al though, They do set The outer, boundaries. Clearly if you have an ambiguous Police, report, or, confused Statement, about evidence, The defense, knows, You don't have a strong, case and you're going To Treat it accordingly. But still, Most, of The appeals are sort of common-sense assessments, of The situation, Mixing, both Proble ms, of evidence and appeals for simple justice, Mobilizing Facts. The "facts" of a case are not self-evident, They Must be Mobilized, A case. is a continually evolving, Process, up until The Moment of Final disposition, Additional, bits, of information, continue To, emerge, and small its "worth" A victim May be released, from The hospital or fail To appear, in court, The defendant May obtain, a Job, The defendant's Parents, May Telephone ATT The Prosecutor, or Public, defender a drug, Sample, sent out for Testing, May be lost, or a diversion, Program, May accept, The defendant, "facts" Must not only occur, They Must be "observed" Marshaled, and brought, To bear, as evidence, in a case. in 1939 I visited, David wilkerson's, Teen Challenge, Ministry, in Brookly n, New York, Freddie Gage (The southern Baptist evengelist) and I were with, David's brother Two brothers Don wilkerson, in spani sh, Harlem, where we were contacting, Youth drug. The Holy spirit, could, cleanse, and change, Young, drug, No contrast, To The hospitals, and govern, then get The legality of abortion, and deliver it To a camara, various, aspects, The Frick, Young, drug, Medicine, and The Look, But More, Modern, Scientific, investigative, has led to The conclusion, That, homosexuality, is The choice, lies with The individual, group. The Counsel, Supevisor, The Think, The sense is The Problem, The hospitals, Two Florida and Connecticut, The Problem, The sense The Details of Photo Transduction, in rod Photoreceptor is The DNA and This was in complet. The evidence, U.S. Government hospitals, The second, experiment, The Prison, Tested, That They used a similar, cover story, Testing a Public The choice The radio host on W.Tic, in Hartford, speaking, feed back, The investigation, The Frick. The Facebook, and You Tube Vidios games, and Music. The activity Choice us is The investigative, Team That, R.t. Rowland, in Prison on corruption, is connect, corr Politics, investigatives F.B.I. The corruption, in Connecticut,

9) This cha[...] in the context of the community. IT describe the City the Hartford, of the cour business, the Court's the office and roles of the Court's is the investigative, the City is the Police department, and its forms of the community, the chapter continues with an examination of the informal organization of the court, describing the recitment, process, for court, officials and the importance, of the court, for local political, leadership, actively, set about to preserve the city center, as a viable business, location, and to preserve and stabilize the citys, is the college, university, account, for some of this, much of this, civic, activity has a broader base. After, he was elected in Mayor, Richard C. Lee, embarked on ambitious, choice, of development, for the city and in doing so provide an important, impetus for attracting, courts the New Haven and Bridgeport, and Hartford, had created its own citywide version of community, action and renewal, so that, when the federal funds, were made available it could put them, to immediate use, New Haven, also has a cadre of politically, active "alternative, public choice, it boasts, several, small but lively and politically knowledgeable, alternative, newspapers, a number, of food cooperatives, the choice the District contest, a rare open seat in Connecticut has generated an unusual amount of rancor among Republicans. Clark filed a complaint, with the Federal, Election Commission last, month after, revelation, the former Gov. John G. Rowland, was on the payroll of the health, care company, is Connecticut, investigative, the F.B.I is Rowland and Chairman Jerry Labriola, the prison on corruption, charges. The evidence the vidios in the choice, the prison www.mundo. and can.com. the charges the prison. N.I.C. the ASSLT. D.O.C. the officer. Jonathan, Nose, Clost Pierre Cell #221 that on 11-1-12 - Time 5:22 ivestigative the Police Department. the, Tren Per, Gershawitz #800 Department. the Police, the Connecticut, the Agency number, Cbo that 2-1-13., that, Arrest Date 3-5-13 TTD--CR13-0102948-T Santos #362958 R.R. Prison.

9. "Frontiers in Immunology: Genetic Engineering," information from the NCI and NIAID, http://allergies.about.com/library/blncinihmmunegenetic.htm?iam=eboom_SKD&term=Recombinant+dna (accessed May 15, 2003).

Date. The state. of Connecticut. office of The CLeRK SuPeRioR
CovRT G.A. 19 20, Park street. Rockville, CT. Date-10-11-13 Manufac
ring. Fast in The interval between, arrest. and Conviction The futur
quickly become. The Past of The record. Between. The Time of first
aPPearance. and disposition, of a Case, a defense. ATTorney helPshis
Client. Create a favorable. The record. The Mental, Health, (CMHC
one which. Might convince, The Prosecutor, and judge. That. The def
endant. is on his way Toward. reform. and He wants. To show
The court. That. The defendant. is helPing.himself and May
encourage, himTo geT a job go back. To. school, or geT into a
drog. Counseling. Program. As one defense. ATTorney-
PuT iT. Help The defendant. begin his rehabilitation. as soon
as Possible. GeT a job. Make restitution. geT him involved. is
social. Service, Programs, Thus. by The Time. Sentencing.
Comes up. The judge. is likely To accede To The Plan.
The defense. ATTorney. Presents. Several weeks, afterhear
ing. This ATTorney give. This. advice, I waT Ched. him Put. iT
To work. in a Case, for which he was. afraid. That. his
Client. would receive a jail. SusPended. The defense-
ATTorney. This. and. he susPecTed. That. his. Client. defense. ATTo
hey. Tells. The ProsecuTor, he wants. To Talk. about. The. Case
She is charged. with breach. of Peace. and. resisting (CMHC
He argues. She. has. a real. drinking. Problem. in The Control Th
room. Producer Michael P. Davies, was Silently. rooting. for
Executive, ShuTTerly. The camara. focused. on ShuTTerly.wife
who had a Proud, smile. frozen on her face. ShuTTerly. Thinkin
The Radio To build. This. Magnificent. and. Magical. Thing Calle
Television, She is TwenTy.one and. looks. ThirTy.five. Another
ProsecuTor, let. her. out. SusPend. The Sentence. The case

even. Though. David. wilkersons. wanTe. her. CoMMiTTed. and
indicated. She. wouldnT. PuT. UP. any. bail. ByfighTing. for her. onThis
I Think. I gained. her TrusT. and Confidence, The ConnecTicuT....
MenTal. HealTh. CMHc The factors. Sense. The Choice The
Radio. The. STudio. 93.7. The ChoiceThe Dragon. SoMe.reMarkable.
galaxies, resid. SouThof. The Dragon. in The ConTrol The Audience
The ChoiceThe Dan. Caun and. MiliTalyThe. ConTrol. The Fox. CT.Chip
Sense.The. Prisom on CorrupTion. is connecTicuT. of The FBI. inves-
TigaTive. The. Problems. The Magazine. UCONN. BridgeporT. The CoMMission
also. CreaTed. a windfall, of PaTronage. PosiTions. for. usa. ParTy lea-
ders, MiLK. Like appoinT.MenTs, To oTher. PosiTions. in The NoMinally
STaTe-run. CourT. STrucTure, appoinTMents, To These posiTion, are
ConTrole, India and. connecTicuT. and Florida is ConTrolled....
heiTher. by The JudiCial DeparTMenT, Nor by Th Chief. Bail.
CoMMissioner buT by u.SA resident judges. and PoliTical leaders
one official of The Commissions sixTy bail. CoMMissioners. The
ConnecTicuT. Bail CoMMission. CreaTed. by The Second, Bail. Reform
AcT 2010, was Modeled. afTer, a widely, heralded. PreTrial...
release The ExPeriMenT, conducTed. by The Vera insTiTuTe, in
New york. CiTY Program. The NaSa is The ProbleM. This I
Think, The ConTrolled. AsTronomical SocieTy The Ciencia.
Serry. Braun. Thes evidence uSA Govern. MenT. HosPiTals
experiment Serri Ruabison. Dain. Malke. Yansen.colon.
GershowiTz #800. David. wilkerson. Dr.RiTz. MaTThe.C.GeDensy
ST. Pirre. JohaThan Vose. Kwak. ST.MarTin, joseph fouche
casTigliohe Baldesar. J. BarTon. Nicola PanTini. ThoMas-ProbaToria.
Todo. Pol ConPiracion. Rejurio. falSain forMasion i daño EMosionale i
fisico. i Sicolojico Pol el SiTTeMa: SPECiAl MoniToRiNG LTAnaya